Timothy B. ALLEN, Appellant,

v.

BURNET REALTY, LLC, d/b/a
Coldwell Banker Burnet,
Respondent.

No. A09–1963.

Court of Appeals of Minnesota.

June 29, 2010.

Morgan R. Smock, Briol & Associates, PLLC, Minneapolis, MN, for appellant.

Wendy J. Wildung, Faegre & Benson, LLP, Minneapolis, MN, for respondent.

Considered and decided by STONEBURNER, Presiding Judge; CONNOLLY, Judge; and COLLINS, Judge.

## OPINION

LAWRENCE T. COLLINS, Judge.*

In this appeal from summary judgment on appellant Timothy B. Allen's (Allen) claim that respondent Burnet Realty, LLC, d/b/a/ Coldwell Banker Burnet (Burnet), unlawfully engaged in the business of insurance, Allen argues that the district court erred by concluding that Burnet's indemnification plan offered to its sales associates was not insurance.

Because the indemnification plan is related to the principal object and purpose of the parties' relationship, the selling of real estate, and Burnet retains responsibility for and exercises control over the risk of certain losses, we conclude that it is not insurance within the meaning of Minn.Stat. § 60K.47.

## FACTS

Burnet is a real estate broker for which Allen worked as a part-time real estate sales associate from 1998 to 2007. Burnet is not licensed to produce or issue insurance. Allen sued Burnet and sought class certification on behalf of other former and current sales associates of Burnet, alleging

---

\* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10.

that Burnet (1) unlawfully sold insurance through an indemnification program it provided to sales associates, in violation of Minn.Stat. § 60K.47; (2) violated the Minnesota Prevention of Consumer Fraud Act, Minn.Stat. § 325F.68–.70 (2008) (MCFA), by failing to inform sales associates that the indemnification program was an errors-and-omissions insurance policy; and (3) unjustly enriched itself by selling unauthorized insurance and keeping the proceeds.

Pursuant to Minn.Stat. § 82.34 (2008), a sales associate, such as Allen, may not hold a real estate license except by licensure through a real estate broker. *Id.* at subd. 4. All of Burnet's sales associates are independent contractors; each associate signs an independent contractor agreement (ICA), which sets forth obligations and duties of a sales associate, including the duty to abide by various Burnet policies. As referenced in this agreement, Burnet offers each sales associate an indemnification program, called the Arbitration/Legal Administration Program or the Legal Assistance Program (LA Program). Over the course of Allen's employment, the terms of this program were fairly consistent.

Burnet's parent company carries errors-and-omissions insurance covering Burnet and its sales associates for liability in excess of $1 million. The LA Program, which Burnet has provided for over 20 years, covers liability up to $1 million. The LA Program agreement states that it is not errors-and-omissions insurance. A sales associate pays an annual fee, which rose over the course of Allen's employment to about $450. Under the terms of the LA Program, if a "dispute, arbitration proceeding or lawsuit" is initiated against a sales associate, Burnet, or both, and that dispute is related to matters within the scope of the ICA, Burnet will participate

with the sales associate in the defense or settlement of the dispute. Burnet will pay all attorney fees, but reserves the right to choose the attorney; the sales associate will be consulted before settlement, but the ultimate decision on resolution of the matter is Burnet's. The sales associate is liable for damages and costs in proportion to the commission received, up to a limit of $1,500. The LA Program specifically excludes claims for fraud or intentional wrongdoing, claims when the sales associate is the buyer or seller in a transaction, claims resulting from the sales associate's failure to abide by Burnet's policies, conduct outside of the scope of the ICA, and claims when the sales associate hires his or her own attorney. A sales associate is not obligated to participate in the LA Program, but if the sales associate does not participate, he or she must provide proof of insurance under an errors-and-omissions policy, which includes specified coverage for Burnet.

All revenue generated by payment for the LA Program was deposited in Burnet's general accounts and was not identified for purposes of providing coverage. No reserves were established and no funds were dedicated solely to costs of the program. In addition to settlement of disputes, the LA Program provided other educational and support services for sales associates. In general, the LA Program generated more in fees than it paid out to settle disputes. Burnet executives acknowledged that the program functioned in a manner similar to an errors-and-omissions insurance policy, and that the fees collected helped sustain "company profitability."

Burnet moved the district court for summary judgment on Allen's claims. The March 12, 2009 hearing was suspended while the district court sought an opinion from the Commissioner of the Department of Commerce, which is charged with regu-

lating both real estate and insurance, as to whether the LA Program constituted an unlawful insurance policy. The commissioner opined that the LA Program, for various reasons, is not subject to regulation by the department. The district court resumed the summary judgment hearing on July 14, 2009. On October 1, 2009, the district court ordered summary judgment in favor of Burnet. This appeal followed.

## ISSUES

1. Did the district court err by concluding as a matter of law that the LA Program is not insurance and thus that Burnet did not engage in the sale of an insurance policy from a company not authorized to sell insurance in the state, pursuant to Minn.Stat. § 60K.47?

2. Did the district court err by granting summary judgment on Allen's consumer fraud claim?

3. Did the district court err by granting summary judgment on Allen's unjust enrichment claim?

## ANALYSIS

■ Summary judgment must be granted if, based on the record, there are no genuine issues of material fact and a party is entitled to judgment as a matter of law. Minn. R. Civ. P. 56.03. "Application of a statute to the undisputed facts of a case involves a question of law, and the district court's decision is not binding on this court." *Davies v. W. Publ'g Co.*, 622 N.W.2d 836, 841 (Minn.App.2001), *review denied* (Minn. May 29, 2001).

### Definition of Insurance

Minn.Stat. § 60K.47 provides that if a person sells an insurance policy issued by a company that is required to be authorized, but is not authorized, to engage in the insurance business in Minnesota, the person is personally liable for all premiums paid and any covered loss an insured has sustained or will sustain. "Person" includes a business entity. Minn.Stat. § 60K.31, subd. 13 (2008). Allen argues that Burnet is both a person selling an unauthorized policy, the LA Program, and a company that is required to be authorized to engage in the insurance business, but that is not so authorized. All three causes of action pleaded by Allen center on the question of whether the LA Program is an insurance product.

For purposes of chapter 60K, "insurance" is defined as "any of the lines of authority in section 60A.06." Minn.Stat. § 60K.31, subd. 5 (2008). Of the lines of insurance set forth in Minn.Stat. § 60A.06 (2008), Allen has identified two that apply: "[t]o insure against liability for loss or damage to the property or person of another caused by the insured or by those for whom the insured is responsible ... irrespective of legal liability of the insured, when issued with or supplemental to policies of liability insurance"; and "[t]o insure against attorneys fees, court costs, witness fees and incidental expenses incurred in connection with the use of the professional services of attorneys at law." *Id.* at subd. 1(13), (15).

Minn.Stat. § 60K.31, subd. 1 (2008) states that "[f]or purposes of sections 60K.30 to 60K.56, the terms in subdivisions 2 to 18 have the meanings given them. The definitions in section 60A.02 are applicable to terms not defined in this section, unless the language or context clearly indicates that a different meaning is intended." Allen argues that the more general definition of insurance found at Minn.Stat. § 60A.02, subd. 3 (2008), must be referenced in order to discern whether the LA Program is insurance. This section defines "[i]nsurance" as "any agreement whereby one party, for consideration, un-

dertakes to indemnify another to a specified amount against loss or damage from specified causes, or to do some act of value to the assured in case of such loss or damage." This is a correct statement of the broadest meaning of insurance. *See, e.g., Knutson Constr. Co. v. St. Paul Fire & Marine Ins. Co.,* 396 N.W.2d 229, 233 (Minn.1986) (identifying as basic insurance principle that "[i]n exchange for the payment of a premium, an insurer assumes certain risks that otherwise would be the obligation of the insured").

That this definition is unworkably broad to be dispositive here is demonstrated by the fact that both parties rely on the same case to support their diametrically opposed positions. Both parties cite *Anstine v. Lake Darling Ranch,* 305 Minn. 243, 233 N.W.2d 723 (1975), in which the supreme court opined in dicta, "A contract which permits indemnity where the indemnitor's conduct bears no relationship to the loss provides for indemnity for hire, rather than equitable indemnity, and seems to be a commercial insurance contract subject to the laws regulating the insurance business." *Id.* at 251–52, 233 N.W.2d at 729. Allen argues that because Burnet has "no obligation to defend and indemnify sales associates for their conduct ... but has the right to seek indemnification from the associates to the extent [Burnet] is vicariously liable for those acts," the LA Program is indemnity for hire or an insurance contract. At the same time, Burnet argues that "the *Anstine* Court recognized the converse of this proposition—that an indemnification is not insurance where, as in this case, it involves only losses to which the indemnitor has an existing connection and over which it has some control."

Because we have found no definitive precedent determining whether an indemnification plan such as the LA Program is insurance or is not insurance, we resort to basic principles of insurance law. Legal treatises generally agree that insurance contracts are based on concepts of risk, risk transference, and distribution of risk. *See, e.g.,* Jeffrey E. Thomas & Francis J. Mootz, III, *1 New Appleman on Insurance Law: Essentials of Insurance Law* § 1.03[1] (2009) (*Appleman*). But because most contracts act to transfer risk to some degree, a more exact analysis is required to determine if a particular contract is an insurance contract. *Id.* at § 1.03[2]. Many courts rely on the "principal object and purpose" test, a test formulated in *Jordan v. Group Health Ass'n,* 107 F.2d 239, 247–48 (D.C.Cir.1939). The *Jordan* court stated that "[t]he question turns, not on whether risk is involved or assumed, but on whether that or something else to which it is related in the particular plan is its principal object and purpose." *Id.*

An apt illustration of this distinction is in the context of warranties, which classically are not insurance. If a manufacturer offers a warranty to replace a defective product, the warranty acts like insurance, because the manufacturer relieves the buyer of the risk of purchasing a defective product; the cost of this risk is included in the purchase price; and the risk is distributed from the manufacturer's standpoint across all of the buyers. "[T]he warranty is at the periphery of the main purpose of the transaction," which is to buy or sell a certain product, and thus is not insurance. *Appleman,* § 1.03[3][b]. But if a warranty includes the promise of replacing not just a defective product, but a stolen or vandalized product, the warranty contract is more likely an insurance contract, because it goes beyond the main purpose of the transaction, i.e., buying or selling a product. *Id.*

■ To determine the "principal object and purpose" of the LA Program, we must examine the relationship between Burnet

and its sales associates. A sales associate, such as Allen, may not hold a real estate license except by licensure through a real estate broker. Minn.Stat. § 82.34, subd. 4. A broker, such as Burnet, "shall be responsible for the acts of any and all of the broker's sales people ... while acting as agents on the broker's behalf." *Id.* at subd. 3; *see Handy v. Garmaker*, 324 N.W.2d 168, 173 (Minn.1982) (concluding broker was vicariously liable for acts of sales agent, despite the fact that broker had no knowledge of and took no part in agent's fraudulent activities, and was "otherwise blameless."). But despite the broker's ultimate responsibility, a sales associate may still be held liable for damages. *See id.* at 170 (affirming district court's imposition of a damages judgment against both broker and agent and grant to broker of indemnity against agent).

■ In light of this relationship, the LA Program functions less as a traditional insurance program and more as an arrangement to share potential risk. The "principal purpose and object" of the ICA, of which the LA Program is a part, is to sell real estate. The LA Program operates to spread the risk of a "defective product," in this case, a dispute in the sales process, between the parties to the ICA. Burnet, as a real estate broker, retains responsibility for the actions of an agent acting within the terms of the ICA; by requiring adherence to its policies, Burnet exercises a degree of control over the risk of incurring losses. Thus we conclude the LA Program is not insurance or "indemnity for hire." *See Anstine*, 305 Minn. at 251–52, 233 N.W.2d at 729 (opining in dicta that a contract of insurance arises when "contract ... permits indemnity where the indemnitor's conduct bears no relationship to the loss").[1]

### Consumer Fraud Claim

■ Allen asserts that the district court erred by ordering summary judgment on his second cause of action, a claim of consumer fraud under the MCFA, Minn.Stat. § 325F.68–70. The sole basis pleaded for this cause of action is that Burnet misled Allen and others by failing to disclose that the LA Program was an unauthorized errors-and-omissions insurance policy. Because we have concluded that the LA Program was not insurance, the district court did not err by granting summary judgment on this cause of action.

### Unjust Enrichment

■ Allen also argues that the district court erred by ordering summary judgment on his third cause of action, a claim for return of amounts paid for the LA Program under a theory of unjust enrichment. This cause of action is likewise based on Allen's premise that the LA Program is unauthorized insurance. Because we have concluded that the LA Program is not insurance, the district court did not err

1. Allen asserts that the district court erred by deferring to an opinion it solicited from the Commissioner of the Department of Commerce, who concluded that the LA Program was not insurance. As Allen argues, this court owes no duty to defer to the commissioner's opinion. We will defer to an agency's expertise in making a factual application to one of its regulations or when a determination requires the particular technical knowledge and expertise of the agency. *See, e.g., In re Review of 2005 Annual Automatic Adjust-* *ment of Charges,* 768 N.W.2d 112, 119 (Minn. 2009). This matter was not before the commissioner for formal decision and therefore his opinion is informational, but not entitled to deference. While we recognize that in conducting its analysis the district court attached significance to the opinion, we have reviewed the record and conclude that in reaching its decision the district court did not unduly defer to the commissioner's opinion; nor do we.

by granting summary judgment on this cause of action.

## DECISION

The district court properly concluded that Burnet's indemnification plan is not insurance within the meaning of Minn.Stat. § 60K.47 and therefore did not err by granting summary judgment in favor of Burnet on all of Allen's claims.

**Affirmed.**