Timothy B. ALLEN, Appellant,

v.

BURNET REALTY, LLC, d/b/a
Coldwell Banker Burnet,
Respondent.

No. A09–1963.

Supreme Court of Minnesota.

Aug. 3, 2011.

Mark J. Briol, Morgan R. Smock, Briol & Associates, PLLC, Minneapolis, MN; Robert W. Biederman, Hubbard & Biederman LLP, Dallas, TX; and D. Ronald Reneker, Munsch Hardt Kopf & Harr, P.C., Dallas, TX, for appellant.

Wendy J. Wildung, Bruce Jones, Faegre & Benson LLP, Minneapolis, MN, for respondent.

Stanford P. Hill, Charles E. Lundberg, Jeffrey R. Mulder, Bassford Remele, P.A., Minneapolis, MN, for amicus curiae Edina Realty, Inc.

## OPINION

ANDERSON, G. BARRY, Justice.

Appellant Timothy B. Allen asks us to decide whether contracts he signed while he worked as a sales associate for respondent Burnet Realty LLC were contracts of insurance as a matter of Minnesota law. Under the contracts, Allen and Burnet Re-

alty agreed to an allocation of expenses should a dispute arise related to Allen's work for Burnet Realty. In litigation commenced after he left Burnet Realty, Allen claimed that Burnet Realty violated Minn. Stat. § 60K.47 (2010) because the contracts were insurance, and as a result, Burnet Realty was required to be, but was not, "authorized to engage in the business of insurance" in Minnesota. Allen also claimed other relief on the basis that the contracts were insurance. The district court granted summary judgment in favor of Burnet Realty, concluding that the contracts were not contracts of insurance. The court of appeals affirmed. We affirm.

Allen was a licensed real estate salesperson and an independent contractor for Burnet Realty from 1999 through 2007. The parties' respective obligations and duties were set out in independent contractor agreements (ICAs) that Allen and Burnet Realty signed in each of the years at issue in this case. On the same days that Allen executed the ICAs, Allen also executed agreements to participate in Burnet Realty's Legal Administration Program (LA Program).

The LA Program was an agreement between Burnet Realty and its sales associates designed to "limit" a sales associate's "personal liability exposure" should an associate be "involved in a dispute or lawsuit." The LA Program applied to "Covered Disputes," which included "a dispute, arbitration proceeding, or lawsuit" initiated against the sales associate, Burnet Realty, or both. The dispute also had to "relate[ ] to" the sales associate's "actions which [were] contemplated within the scope of" the ICA between the sales associate and Burnet Realty. There were certain exceptions to the disputes that were covered by the LA Program, including when the associate engaged in intentional or reckless wrongdoing or fraud, or when the associate acted as a buyer or seller in a transaction. All sales associates were required to either join the program or obtain "company approved outside coverage."

When a covered dispute arose, the associate and Burnet Realty had different rights and obligations. The sales associate and Burnet Realty agreed to split all the legal expenses in connection with a covered dispute, which included errors-and-omissions insurance costs, attorney fees, and settlement costs. The sales associate and Burnet Realty split these expenses in the same proportion as the commissions the associate received. The LA Program capped the sales associate's liability at $1,500, and Burnet Realty was responsible for all expenses above that amount. The sales associate also had to cooperate with Burnet Realty in the defense of the dispute. Burnet Realty retained the ability to choose the attorney and retained the authority to make decisions on resolutions and settlements, but agreed to discuss resolutions and settlements with the sales associate. The LA Program also prohibited Burnet Realty from asserting any claims against the sales associate in connection with a covered dispute. The LA Program charged the sales associate an annual fee, which rose from $395 in 2002 to $450 in 2006.

About one year after leaving Burnet Realty, Allen commenced an action against the company, alleging that Burnet Realty (1) sold insurance through its LA Program in violation of Minn.Stat. § 60K.47 (2010);[1]

---

1. Section 60K.47 states that
   [a]ny person, whether or not licensed as an insurance producer, who participates in any manner in the sale of any insurance policy or certificate, or any other contract providing benefits, for or on behalf of any company that is required to be, but that is not authorized to engage in the business of

(2) violated the Minnesota Prevention of Consumer Fraud Act, Minn.Stat. §§ 325F.68–.70 (2010), by failing to inform sales associates that the indemnification program was an errors-and-omissions insurance policy; and (3) obtained unjust enrichment by selling unauthorized insurance and keeping the proceeds. Burnet Realty moved for summary judgment.

Before ruling on the summary judgment motion, the district court requested that the Minnesota Department of Commerce, which regulates both real estate and insurance, provide its view as to whether the LA Program constituted an unlawful insurance policy. The Commissioner of the Department concluded that the LA Program created a relationship that was "markedly different" from the typical insurer-insured relationship, and that the LA Program acted as "a self-insurance arrangement" that "would not be regulated under Minnesota's insurance laws."

The district court granted summary judgment in favor of Burnet Realty. The court relied on the fact that the LA Program was incidental to the independent contractor relationship and that Burnet Realty, because of its statutory and common-law liability for the actions of sales associates, was not assuming new risks in exchange for a premium. The court also concluded the LA Program did not fall within our characterization of insurance as a contract providing indemnification for "losses with which the indemnitor had no connection and over which it had no control." *Anstine v. Lake Darling Ranch*, 305 Minn. 243, 251, 233 N.W.2d 723, 728 (1975), *overruled on other grounds by Farmington Plumbing & Heating Co. v. Fischer*, 281 N.W.2d 838 (Minn.1979). The court concluded that because the LA Pro-

gram was not insurance, Allen's section 60K.47 claim failed. The court also concluded that Allen's other claims failed because "those claims assume[d] that the LA Program was insurance that Burnet [Realty] was selling in violation of Section 60K.47."

Allen appealed. The court of appeals affirmed in a published decision. *Allen v. Burnet Realty, LLC*, 784 N.W.2d 84, 90 (Minn.App.2010). The court of appeals concluded the general statutory definition of insurance to be too broad, choosing to apply the "principal object and purpose" test to determine whether the LA Program was insurance. *Id.* at 88 (citing *Jordan v. Grp. Health Ass'n*, 107 F.2d 239, 247–48 (D.C.Cir.1939)). Under the principal object and purpose test—which we have never adopted—to determine whether a contract is one for insurance, "[t]he question turns, not on whether risk is involved or assumed, but on whether that or something else to which it is related in the particular plan is its principal object and purpose." *Jordan*, 107 F.2d at 248. Applying this test, the court affirmed summary judgment on all of Allen's claims. *Allen*, 784 N.W.2d at 90. Allen sought review, and we granted his petition.

■■■ We review decisions to grant or deny summary judgment de novo. *Premier Bank v. Becker Dev., LLC*, 785 N.W.2d 753, 758 (Minn.2010). Under the de novo standard of review, "we determine if the law was properly applied and whether there were genuine issues of material fact that precluded summary judgment." *Id.* The material facts of this case are not disputed. The interpretation of statutes is a question of law that we review de novo. *Eischen Cabinet Co. v. Hildebrandt*, 683

---

insurance in this state, other than pursuant to sections 60A.195 to 60A.209, is personally liable for all premiums, whether earned or unearned, paid by the insured, and the premiums may be recovered by the insured.

N.W.2d 813, 815 (Minn.2004). The construction of a contract, like the construction of a statute, is a question of law, unless the contract is ambiguous. *Rosenberg v. Heritage Renovations, LLC,* 685 N.W.2d 320, 324 (Minn.2004).

## I.

The dispositive issue in this case is whether the LA Program constituted "insurance," which would render summary judgment on Allen's claims inappropriate. We conclude, based on the definitions of insurance in the statutes and our case law, that the LA Program was not insurance and therefore Burnet Realty did not improperly sell Allen an insurance policy.

## A.

■ Allen cites to numerous statutory definitions in order to arrive at the conclusion of his argument that the LA Program is insurance. The core of Allen's argument appears to be the definition of insurance found in Minn.Stat. § 60A.02, subd. 3(a) (2010). Therefore, we will start with this definition. We conclude that this statutory definition of insurance does not support the proposition that the LA Program is insurance under Minnesota law.

A general definition of insurance is found in Minn.Stat. § 60A.02, subd. 3(a). This definition states that insurance is "any agreement whereby one party, for a consideration, undertakes to indemnify another to a specified amount against loss or damage from specified causes, or to do some act of value to the assured in case of such loss or damage." Minn.Stat. § 60A.02, subd. 3(a). Minnesota Statutes § 60A.02, subd. 1 (2010), applies this definition to a range of insurance chapters, including Minn.Stat. ch. 60K (2010).

The LA Program is not insurance under this definition because insurance requires indemnity "to a specified amount." The

LA Program, while stating the sales associate is liable for up to $1,500, does not specify an amount of liability for Burnet Realty. Instead, Burnet Realty is liable for "all expenses incurred" above the sales associate's $1,500 maximum contribution. There is no specified amount of Burnet Realty's obligation to indemnify Allen.

More than a century ago, we applied this definition of insurance to a contract and required that, in order to be a contract of insurance, a specific level of indemnity was required. *Physicians' Def. Co. v. O'Brien,* 100 Minn. 490, 495, 111 N.W. 396, 398 (1907). We concluded that all the elements of the insurance definition were met in that case: "one party (the company) for a consideration (stated therein) undertakes to indemnify (that is, protect against, make good, by standing the expense of the litigation) another (the physician) to a specific amount (not to exceed $5,000, etc.) against loss or damage from a specific cause (an action for malpractice)." *Id.* Here, we cannot identify the "specific amount" for which Burnet Realty agreed to indemnify Allen because Burnet Realty was responsible for "all expenses" above $1,500. Therefore, we conclude the LA Program does not constitute insurance under Minn.Stat. § 60A.02, subd. 3(a).

## B.

■ Allen argues in the alternative that Minn.Stat. § 60K.31 (2010) provides definitions of insurance that apply in this case and expose Burnet Realty to liability under section 60K.47. He argues, in effect, that an indemnification agreement that is not insurance under section 60A.02, subd. 3(a), can be insurance under section 60K.31. We disagree.

■ We interpret a statute, whenever possible, to give effect to all of its provisions; we also read and construe a statute

as a whole and "interpret each section in light of the surrounding sections to avoid conflicting interpretations." *Am. Family Ins. Grp. v. Schroedl*, 616 N.W.2d 273, 277 (Minn.2000); *see also* Minn.Stat. § 645.16 (2010) ("Every law shall be construed, if possible, to give effect to all its provisions."). Section 60K.31 defines "insurance" as "any of the lines of authority in section 60A.06." Minn.Stat. § 60K.31, subd. 5. Minnesota Statutes § 60A.06 (2010) then lists the lines of authority that must be specified in the charters or certificates of incorporation of insurance companies in order for the companies to be authorized to transact business in the specified line of authority. Because the definition of insurance in section 60A.02, subd. 3(a), discussed *supra*, applies to section 60A.06, we conclude that the lines of authority listed in section 60A.06 are specific types of insurance that meet the definitions of section 60A.06.

Moreover, when we have construed section 60K.47 or its predecessor statutes, the cases dealt with the liability of an insurance producer or agent, not an insurer. *See Farmers & Merchs. State Bank of Pierz v. Bosshart*, 400 N.W.2d 739, 744 (Minn.1987) (holding that an insurance agent who did not comply with the Surplus Lines Insurance Act was not exempt from liability under the predecessor statute of section 60K.47); *see also St. Michel v. Burns & Wilcox, Ltd.*, 433 N.W.2d 130, 134 (Minn.App.1988) (imposing liability on an insurance agency that participated in the placement of a policy that did not comply with the section regulating surplus lines). Allen asserts in this appeal that Burnet Realty is liable under this statute because Burnet Realty was, in effect, acting as its own producer when it participated in the "sale" of the insurance contract it wrote. We decline to adopt this approach.

## C.

Our conclusion that the LA Program is not insurance is confirmed by looking at the LA Program's details and comparing them to our case law and typical contracts for insurance. First, the LA Program does not expose Burnet Realty to any additional risk for which it would not already be liable. We have stated that an "elementary insurance principle[ ]" is that "[i]n exchange for the payment of a premium, an insurer assumes certain risks that otherwise would be the obligation of the insured." *Knutson Constr. Co. v. St. Paul Fire & Marine Ins. Co.*, 396 N.W.2d 229, 233 (Minn.1986). Here, Burnet Realty is not assuming additional risk that would otherwise be allocated to the sales associate. Minnesota Statutes § 82.63, subd. 3 (2010), states that "[e]ach broker shall be responsible for the acts of any and all of the broker's sales people and closing agents while acting as agents on the broker's behalf." Burnet Realty, as the real estate broker, is statutorily responsible for the sales associates' actions. *See also Handy v. Garmaker*, 324 N.W.2d 168, 173 (Minn.1982) (concluding that the employer was vicariously liable for the sales agent's conduct even though the employer "had no knowledge of [the sales agent's] activities, took no part in any of the transactions, and [wa]s otherwise blameless"). Therefore, Burnet Realty was not assuming new risk in exchange for Allen's payment of a premium.

Moreover, a covered dispute, as defined by the LA Program, would include an action brought only against Burnet Realty that did not include the sales associate. Yet the LA Program still requires the sales associate to contribute to the costs of handling the action, despite the sales associate not being a named party. In this situation, Burnet Realty would ordinarily be the only entity at risk. Therefore, in situations where Burnet Realty is the only

named party to a case, the LA Program does not allocate risk that "otherwise would be the obligation of the insured." *Knutson Constr. Co.*, 396 N.W.2d at 233.

▮ Second, we have stated that in an insurance contract, the insurer will have no connection with or control over the losses sustained on the part of the insured. *See Anstine v. Lake Darling Ranch*, 305 Minn. 243, 251–52, 233 N.W.2d 723, 728–29 (1975) (stating that a contract that "requires the indemnitor to indemnify the indemnitee for losses with which the indemnitor had no connection and over which it had no control" or a contract that "permits indemnity where the indemnitor's conduct bears no relationship to the loss" is an insurance contract), *overruled on other grounds by Farmington Plumbing & Heating Co. v. Fischer*, 281 N.W.2d 838 (Minn.1979). Here, in order to qualify as disputes covered by the LA Program, the dispute must have been related to the sales associate's actions "which [were] contemplated within the scope of [Burnet Realty's] Independent Contractor Agreement." Therefore, Burnet Realty had a strong connection with, and a certain amount of control over, the actions of the sales associate that would lead to the covered dispute, and in turn any losses. Because the LA Program did not involve an insurer that lacks a connection with and control over the losses, it bears little resemblance to an insurance product.

Finally, the LA Program differed from a traditional insurance contract in several key respects that supports our conclusion that this program is not insurance. First, it is difficult to consider the annual fee a "premium" for insurance because Burnet Realty charged all employees a fixed fee. Therefore, there was no underwriting of risk unique to individual employees. Second, because covered disputes under the LA Program included disputes against Burnet Realty and not the sales associate, a sales associate would be required to contribute to the cost of defending a suit against only Burnet Realty. Third, the LA Program requires a sales associate's participation in disputes that are not litigation. Covered disputes are not limited to litigation only, yet the sales associate is liable for "[a]ll legal expenses (whether direct or indirect) incurred in connection" with the dispute. Taking all of these differences together, the LA Program appears to be merely a method of ensuring that the sales associate and Burnet Realty are defending any disputes as a team, rather than as separate entities.

We conclude that the LA Program does not constitute insurance under the applicable statutes or case law. Therefore, we affirm the grant of summary judgment to Burnet Realty.

## II.

The court of appeals utilized the "principal object and purpose" test for deciding whether the LA Program was insurance. *Allen*, 784 N.W.2d at 85. Because we conclude that the LA Program is not "insurance" under statutory definitions on statute and our case law, we decline to adopt the principal object and purpose test.

Affirmed.

MEYER, and STRAS, JJ., took no part in the consideration or decision of this case.