# IN THE SUPREME COURT OF TENNESSEE
## AT NASHVILLE
### February 10, 2016 Session

## EDWARD MARTIN v. GREGORY POWERS ET AL.

**Appeal by Permission from the Court of Appeals**
**Circuit Court for Williamson County**
**No. 2013-347     James G. Martin III, Judge**

_____

**No. M2014-00647-SC-R11-CV – Filed October 24, 2016**

_____

This case arises out of an incident in which the Defendant, Gregory Powers, drove a car he had rented from Enterprise Rent-A-Car ("Enterprise") into the Plaintiff, Edward Martin. The Plaintiff sued the Defendant, the Defendant's automobile liability insurer, and Enterprise. Additionally, the Plaintiff provided notice of the lawsuit to his own automobile liability insurance carrier, IDS Property Casualty Insurance Company ("IDS"), in order to recover through the uninsured motorist coverage provision of the Plaintiff's policy ("the Policy"). IDS denied coverage and moved for summary judgment, arguing that the rental car ("the Rental Car") did not qualify as an "uninsured motor vehicle" under the Policy. The trial court[1] granted IDS's motion, and the Court of Appeals affirmed. We granted review to determine whether the Rental Car qualified as an "uninsured motor vehicle" under the Policy. We hold that the Rental Car was an "uninsured motor vehicle" under the Policy. Accordingly, we reverse the grant of summary judgment to IDS and remand this matter for further proceedings.

### Tenn. R. App. P. 11 Appeal by Permission; Judgment of the
### Court of Appeals Reversed; Remanded

JEFFREY S. BIVINS, C.J., delivered the opinion of the Court, in which CORNELIA A. CLARK and SHARON G. LEE, JJ., joined. HOLLY KIRBY, J., filed a dissenting opinion.

_____

[1] The order granting summary judgment to IDS on February 19, 2014, actually was entered by Judge M. Keith Siskin. However, on March 5, 2014, Judge James G. Martin III entered the "Agreed Order Certifying as a Final Judgment the Court's Order Granting Defendant IDS['s] Motion for Summary Judgment." Accordingly, Judge Martin is listed as the trial judge in this matter.

-1-

Patrick Shea Callahan, Cookeville, Tennessee (on appeal), and Matthew C. Hardin, Nashville, Tennessee (at trial), for the appellant, Edward Martin.

W. Bryan Brooks and Amy V. Peters (on appeal), and Benjamin J. Miller (at trial and on appeal), Nashville, Tennessee, for the appellee, IDS Property Casualty Insurance Company.

## OPINION

### Factual and Procedural Background

On July 20, 2012, the Plaintiff, a bar owner in Franklin, Tennessee, refused to serve alcohol to the Defendant, who appeared intoxicated, and asked the Defendant to leave the bar. The Plaintiff followed the Defendant out to the parking lot and watched him get into the driver's seat of the Rental Car, a Kia Sorento. The Defendant then drove the Rental Car into the Plaintiff's knee. According to the Plaintiff's Complaint, the Plaintiff incurred injuries and medical expenses from the collision.

At the time of this incident, the Plaintiff was insured under a policy of automobile insurance issued by IDS, which provided uninsured/underinsured motorist coverage in the amount of $250,000 per person or $500,000 per event. The Defendant had automobile liability insurance through Mountain Laurel Assurance Company ("Mountain Laurel"). According to the Enterprise receipts submitted by the Plaintiff, there was no indication that the Defendant purchased the optional automobile insurance through Enterprise for the Rental Car.

The Plaintiff filed a complaint on July 18, 2013, against the Defendant, Mountain Laurel, and Enterprise. The Plaintiff also served IDS[2] with a copy of the summons and complaint for the purpose of bringing a claim under his uninsured motorist coverage policy.

---

[2] The Plaintiff's complaint initially mistakenly named Ameriprise Insurance Company ("Ameriprise") as his uninsured motorist insurer. IDS filed an answer to the Plaintiff's complaint, and the trial court dismissed the suit against Ameriprise. No issue has been raised questioning IDS's status as the Plaintiff's uninsured motorist carrier.

On August 1, 2013, Mountain Laurel filed a motion to dismiss pursuant to Rule 12 of the Tennessee Rules of Civil Procedure. Mountain Laurel previously had filed a complaint for a declaratory judgment requesting a judicial declaration that it had no obligation to indemnify the Defendant against any claims asserted by Plaintiff because the Defendant's act of striking the Plaintiff was intentional. Mountain Laurel was granted summary judgment in the separate declaratory judgment proceeding on January 22, 2014. Thus, on April 15, 2014, the trial court dismissed without prejudice all claims against Mountain Laurel in this case pursuant to Rule 41 of the Tennessee Rules of Civil Procedure.

On August 23, 2013, Enterprise filed an answer, asserting that, pursuant to 49 U.S.C. § 30106, it was not vicariously liable for any harm resulting from the use, operation, or possession of any of its rental vehicles, and requested the complaint to be dismissed with prejudice. The Plaintiff subsequently provided notice of his intent to voluntarily dismiss with prejudice his claims against Enterprise pursuant to Rule 41.01 of the Tennessee Rules of Civil Procedure. Accordingly, the trial court dismissed with prejudice the Plaintiff's claims against Enterprise on October 10, 2013.

On November 14, 2013, IDS filed an answer to the Plaintiff's complaint. IDS subsequently filed a motion for summary judgment pursuant to Rule 56 of the Tennessee Rules of Civil Procedure. In its memorandum of law supporting its motion, IDS argued that, because Enterprise is a self-insurer under the Tennessee Financial Responsibility Act, Tenn. Code Ann. §§ 55-12-101 to -140 (2012) ("the FR Law"), the Rental Car did not qualify as an "uninsured motor vehicle" under the Policy. As support, IDS provided a copy of Enterprise's Certificate of Self-Insurance issued on March 8, 2013, by the Director of Financial Responsibility for the Tennessee Department of Safety and Homeland Security ("the Certificate").[3] The Certificate provides as follows:

> This certifies the company named herein has established self-insurance
> with the Tennessee Department of Safety for all owned or leased vehicles,
> pursuant to § 55-12-111, Tennessee Code Annotated. This certificate of

---

[3] In his response to IDS's motion for summary judgment, the Plaintiff pointed out that the Certificate was issued after the date on which the Defendant struck the Plaintiff with the Rental Car. In his brief to this Court, however, the Plaintiff states that "Enterprise had obtained a certificate of 'self-insurance' as of the time of the accident," and the Plaintiff does not argue that Enterprise did not have a certificate of self-insurance in effect on the date of the collision. Accordingly, the Plaintiff has waived any issue regarding the effective date of the Certificate in this matter. See Tenn. R. App. P. 27(a)(7) (requiring appellant's brief to contain argument on each issue raised); Banks v. Elks Club Pride of Tenn. 1102, 301 S.W.3d 214, 227 n.16 (Tenn. 2010) (treating issue as waived because party failed to brief and argue the issue).

self-insurance is valid until March 24, 2014, unless cancelled by the Department. This certificate is sufficient to establish evidence of financial responsibility as compliance with the Tennessee Financial Responsibility Law of 1977.

IDS argued that, because the Plaintiff's alleged damages did not arise out of the ownership or use of an uninsured motor vehicle, the Plaintiff could not recover from IDS for this incident, and IDS was entitled to judgment as a matter of law.

The trial court held a hearing on IDS's motion for summary judgment, but that transcript is not included in the record on appeal. The trial court granted IDS's motion for summary judgment on February 19, 2014, and certified its judgment as final for purposes of appeal on March 5, 2014. On appeal, the Court of Appeals affirmed the trial court's grant of summary judgment. Martin v. Powers, No. M2014-00647-COA-R3-CV, 2015 WL 895336, at *6 (Tenn. Ct. App. Feb. 27, 2015), perm. appeal granted (Tenn. Aug. 13, 2015). The Plaintiff then requested permission to appeal to this Court, which we granted.

## Analysis

*Standard of Review*

We review a trial court's decision on a motion for summary judgment de novo with no presumption of correctness. Parker v. Holiday Hospitality Franchising, Inc., 446 S.W.3d 341, 346 (Tenn. 2014). A trial court should grant summary judgment only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04.

*Was the Rental Car an "Uninsured*
*Motor Vehicle" as Defined in the Policy?*

IDS has been granted summary judgment in this case based upon the lower courts' conclusion that the Rental Car does not meet the definition of an "uninsured motor vehicle" as that term is used in the Policy. The lower courts arrived at their conclusion based on their construction of Tennessee Code Annotated section 55-12-111, a provision of the FR Law. IDS maintains that the lower courts' conclusion was correct. The proper interpretation of the relevant Policy language, as well as the proper construction and

application of Tennessee Code Annotated section 55-12-111, are issues of first impression before this Court.

We construe insurance policies "using the same tenets that guide the construction of any other contract." Garrison v. Bickford, 377 S.W.3d 659, 664 (Tenn. 2012). Accordingly, our primary goal is to ascertain and give effect to the parties' intent. Id. To that end, we endeavor to give the terms used in an insurance policy their plain and ordinary meaning. Id. "The ordinary meaning envisioned is the meaning which the average policy holder and insurer would attach to the policy language." S. Trust Ins. Co. v. Phillips, 474 S.W.3d 660, 667 (Tenn. Ct. App. 2015) (internal quotation marks omitted). More precisely, "[t]he language of an insurance contract 'must be read as a layman' would read it." Id. (quoting Paul v. Ins. Co. of N. Am., 675 S.W.2d 481, 484 (Tenn. Ct. App. 1984)); see also Harrell v. Minnesota Mut. Life Ins. Co., 937 S.W.2d 809, 814 (Tenn. 1996) (stating that "an insured should not have to consult a long line of case law or law review articles and treatises to determine the coverage he or she is purchasing under an insurance policy," and considering what "the average insured would understand").

"The policy should be construed as a whole in a reasonable and logical manner, and the language in dispute should be examined in the context of the entire agreement." Garrison, 377 S.W.3d at 664 (citations and internal quotation marks omitted). Importantly, however, "contracts of insurance are strictly construed in favor of the insured, and if the disputed provision is susceptible to more than one plausible meaning, the meaning favorable to the insured controls." Id.; see also Allstate Ins. Co. v. Watts, 811 S.W.2d 883, 886 (Tenn. 1991) (citing Travelers Ins. Co. v. Aetna Cas. & Sur. Co., 491 S.W.2d 363, 367 (Tenn. 1973)) (emphasizing that "exceptions, exclusions and limitations in insurance policies must be construed against the insurance company and in favor of the insured").

When construing a contract of insurance, we also must consider any relevant statutes: "any statute applicable to an insurance policy becomes part of the policy and such statutory provisions override and supersede anything in the policy repugnant to the provisions of the statute." Hermitage Health & Life Ins. Co. v. Cagle, 420 S.W.2d 591, 594 (Tenn. Ct. App. 1967). The construction of a statute presents a question of law, and this Court interprets statutes de novo with no presumption of correctness accorded to the rulings of the courts below. Baker v. State, 417 S.W.3d 428, 433 (Tenn. 2013).

The foremost rule of statutory construction requires us to ascertain and effectuate the Legislature's intent. Id. To that end, we begin with the actual words of the statute, to which we accord their natural and ordinary meaning. Id. We endeavor to construe

statutes in a reasonable manner which avoids statutory conflict.  Id.  We "must presume that the Legislature did not intend an absurdity and adopt, if possible, a reasonable construction which provides for a harmonious operation of the laws."  Fletcher v. State, 951 S.W.2d 378, 382 (Tenn. 1997).

To begin our analysis, we recite the relevant Policy language contained in the amendatory endorsement concerning the Plaintiff's uninsured motorist coverage:

> We will pay compensatory damages which an insured person is legally entitled to recover from the owner or operator of an uninsured motor vehicle because of:
>
> > 1. Bodily injury sustained by that person and caused by an accident; and
> >
> > 2. Property damage caused by an accident if the declarations indicates [sic] that both bodily injury and property damage Uninsured Motorists Coverage applies.
>
> We will pay damages for bodily injury an insured person suffers in a car accident while occupying a private passenger car or utility car, or as a pedestrian as a result of having been struck by an uninsured motor vehicle. We will pay under this coverage only after any applicable bodily injury liability bonds or policies have been exhausted by payment of judgements [sic] or settlements.
>
> The owner's or operator's liability for these damages must arise out of the ownership, maintenance or use of the uninsured motor vehicle. . . .
>
> . . . .
>
> Uninsured motor vehicle means a land motor vehicle or trailer of any type which is:
>
> > a) not insured by a bodily injury liability bond or policy at the time of the accident; or
> >
> > b) insured by a liability or bond policy in which the sum of the bodily injury liability limits available for payment under all policies, bonds and securities at the time of the accident:

-6-

> i) is less than the minimum bodily injury liability limits for this coverage; or
>
> ii) has been reduced by payment to persons other than the insured to an amount which is less than the limit of liability for this coverage.
>
> *"Uninsured motor vehicle["], does not mean a vehicle . . . owned or operated by a self-insurer under any applicable motor vehicle law, except a self-insurer which is or becomes insolvent[.]*

(Emphasis added). Thus, we must determine whether the Rental Car is a vehicle "owned or operated by a self-insurer under any applicable motor vehicle law" such that it is excluded from uninsured motorist coverage under the Policy.

This issue contains two sub-issues. First, what is a "self-insurer"? The Policy does not define this term. However, the basic concept of insurance involves an insurer who, in exchange for a premium, "'assumes certain risks that otherwise would be the obligation of the insured.'" Allen v. Burnet Realty, LLC, 801 N.W.2d 153, 158 (Minn. 2011) (quoting Knutson Constr. Co. v. St. Paul Fire & Marine Ins. Co., 396 N.W.2d 229, 233 (Minn. 1986)). If the insured suffers a loss, or is adjudged liable for a loss, that resulted from a covered risk, the insurer is obligated to assume the financial burden of the loss or liability, up to the limits of coverage. Thus, a motorist may purchase a policy of liability insurance that covers the risk of the motorist negligently causing an accident that results in the motorist being liable for damages. It is this risk of liability for damages that the motorist is insuring himself against.

If the risk is not undertaken to be covered by the insurer, however, the motorist will be uninsured as to the damages he caused. Indeed, in this case, the Defendant has been declared uninsured under his own liability policy with Mountain Laurel because Mountain Laurel did not undertake the risk of the Defendant injuring someone intentionally. Similarly, if a motorist is for some reason immune from liability for damages he causes while driving, he has no risk to insure against. It is a basic precept of insurance that, "'[i]f there is no risk, . . . there can be [no] insurance.'" Interstate Fire & Cas. Co. v. Abernathy, 93 So. 3d 352, 359 (Fla. Dist. Ct. App. 2012) (quoting Jordan v. Group Health Ass'n, 107 F.2d 239, 245 (D.C. Cir. 1939) (alterations in original)).

In light of the Policy's failure to define the term "self-insurer," and in light of these general principles of insurance, a reasonable person insured under an insurance policy containing the language at issue in this case would conclude that the term "self-

insurer" is a person or entity able to cover the risk of a liability through their own assets. See, e.g., Am. Nurses Ass'n v. Passaic Gen. Hosp., 471 A.2d 66, 69 (N.J. Super. Ct. App. Div. 1984) (recognizing that "[t]he essence of self-insurance, a term of colloquial currency rather than of precise legal meaning, is the retention of the risk of loss by the one upon whom it is directly imposed by law or contract"), aff'd in part, rev'd in part on other grounds, 484 A.2d 670 (N.J. 1984); see also Bethke v. Auto-Owners Ins. Co., 825 N.W.2d 482, 488 n.8 (Wis. 2013) ("Broadly stated, a self-insurer generally elects to take on the risk of paying claims by itself rather than purchasing a separate policy from an insurance company. An entity of sufficient size such as a corporation or governmental agency might elect to handle the risk of becoming liable to an injured party by setting aside assets. The entity then uses its own assets to pay claims." (citations omitted)). That is, if the entity were declared liable for a loss and a judgment was rendered against the entity to compensate for that loss, the entity would have sufficient assets to pay the judgment. Indeed, a leading treatise on insurance law recognizes that there are "many formal procedures . . . whereby an entity can become recognized as a self-insurer. This is most commonly accomplished by filing a bond or furnishing another form of proof of the *ability to pay amounts for which the self-insurer may become liable.*" 1A Steven Plitt et al., Couch on Insurance § 10:1 (Monique Leahy ed., 3d ed. 2010 & June 2016 Update) (emphasis added). Again, the focus is on the entity's potential liability for damages. As Virginia's supreme court has recognized, "self-insurance operates as 'assurance' that judgments will be paid." Farmers Ins. Exch. v. Enter. Leasing Co., 708 S.E.2d 852, 857 (Va. 2011) (quoting N. Ind. Pub. Serv. Co. v. Bloom, 847 N.E.2d 175, 185 (Ind. 2006)). As with a policy of insurance, however, if the entity is immune from judgments for a particular liability, there is no cause to prove an ability to pay and no reason to be considered "self-insured." Again, one cannot insure against a non-existent risk.

Although the Policy does not define the term "self-insurer," the Policy's exclusion of vehicles owned by a self-insurer from the definition of uninsured motor vehicle does not apply when the self-insurer "is or becomes insolvent." This language reflects the underlying purpose of uninsured motorist coverage, which is to pay compensation to the insured policy owner when the liable third party is unable to do so. In light of the underlying recognition that one who qualifies as a "self-insurer" is able to pay assessed liabilities, the Policy language acknowledges that a self-insurer who is insolvent is, in actual fact and operation, not a self-insurer at all. Accordingly, the Policy itself limits the exclusion of motor vehicles owned by self-insurers to those vehicles owned by self-insurers who are capable of paying damages assessed against them. If the self-insured owner is insolvent, the vehicle is considered uninsured under the terms of the Policy itself.

-8-

The Policy excludes motor vehicles owned by solvent self-insurers because those vehicles are, in actual operation and effect, *insured*. They are simply insured through the assets of the owner rather than through a policy of insurance issued to the owner by an insurance company. There is no reason for such vehicles to be considered "uninsured" because they *are* insured. As recognized by the United States District Court for the Eastern District of Tennessee, which was considering a similar uninsured motorist policy provision under Arkansas law,[4]

> [i]t appears that the purpose of the self-insurer language of the policy, in the first instance, was to assure that a self-insured vehicle could not automatically be considered uninsured simply because the self-insurer was not an insurance company and no insurance policy had been issued for the vehicle. No reason exists to treat a vehicle covered by a policy of insurance issued by an insurance company differently from a vehicle which is self-insured for the purpose of determining its status as an uninsured motor vehicle.

Hensley v. Miles, No. 2:01CV142, 2005 WL 1182528, at *6 n.4 (E.D. Tenn. May 18, 2005) (construing Arkansas law). We emphasize, however, that the very concept of insurance, regardless of whether the insurance exists by way of owner assets or by way of an insurance policy, is inextricably tied to the *risks of liability* that are insured against.

The second sub-issue presented by the Policy language under consideration is the identification of the "applicable motor vehicle law[s]." The Policy does not identify any particular law(s) that might apply. Indeed, the Policy language is so broad and vague as to encompass both Tennessee and federal law, and both statutory and common law. Given the large number of both federal and state statutes, as well as common law decisions, that could fit within the description "applicable motor vehicle law," it is unreasonable to expect an insured to discern the meaning of the Policy language at issue.

The Policy's failure to define "self-insurer" and its broad reference to "any applicable motor vehicle law" renders the provision under consideration both vague and indefinite. Relying on the Policy alone, it would be impossible for an insured to understand the precise meaning or scope of this exclusion from uninsured motorist coverage. Accordingly, we hold that the provision at issue is ambiguous. "Where

---

[4] The policy under consideration provided that "'uninsured motor vehicle' does not include any vehicle . . . [o]wned or operated by a self insurer under any applicable motor vehicle law, except a self insurer who is or becomes insolvent and cannot provide the amounts required by that motor vehicle law." Hensley v. Miles, No. 2:01CV142, 2005 WL 1182528, at *2 (E.D. Tenn. May 18, 2005).

provisions that purport to limit insurance are ambiguous, . . . they must be construed against the insurance company and in favor of the insured." Osborne v. Mountain Life Ins. Co., 130 S.W.3d 769, 773 (Tenn. 2004).

Other courts considering a similar uninsured motorist provision have also concluded that it was ambiguous. For instance, in Bethke v. Auto-Owners Ins. Co., the Wisconsin Supreme Court considered a claim for underinsured motorist coverage after an allegedly negligent driver of a rental car caused an accident that killed one person and seriously injured another. 825 N.W.2d 482, 484 (Wis. 2013). The insurer contended that the rental vehicle was not an "underinsured vehicle" under the terms of the policy because the rental car company was a self-insurer. Id. The policy provided that "[u]nderinsured automobile does not include an automobile . . . *owned or operated by a self-insurer under any automobile law*." Id. at 485-86. The policy did not define the term "self-insurer." Id. at 489. Noting that "[t]he term 'self-insurance' often gives rise to interpretation issues," id. at 488, the court held that, "as applied, the policy term 'self-insurer' is ambiguous because it is unclear whether a reasonable insured would understand that a car rental company which is statutorily liable [under a Wisconsin statute] is a 'self-insurer' under the policy," id. at 493; see also Hensley v. Miles, No. 2:01CV142, 2004 WL 3335449, at *5 (E.D. Tenn. Dec. 7, 2004) (in considering an exclusion from uninsured motorist coverage similar to the exclusion at issue in the instant case, holding that "[t]he policy's language that *seemingly* excludes a self-insured vehicle from the definition of an uninsured motorist vehicle simply makes no sense when read in light of the policy's other language regarding insolvency of a liability insurance carrier, or the insolvency of a self-insurer, or the unavailability of liability insurance due to a denial of coverage"), adopted by Hensley v. Miles, No. 2:01CV142, 2005 WL 1182528, at *1 (E.D. Tenn. May 18, 2005).

Our conclusion that the Policy is ambiguous does not end our analysis, however. We turn now to several statutes that also impact our decision. We begin with a brief review of Tennessee's Uninsured Motorist Act, Tenn. Code Ann. §§ 56-7-1201 to -1206 (2008) ("the UM Act"). The first section of the UM Act provides as follows:

> Every automobile liability insurance policy delivered, issued for delivery or renewed in this state, covering liability arising out of the ownership, maintenance, or use of any motor vehicle . . . shall include uninsured motorist coverage, subject to provisions filed with and approved by the commissioner,[5] for the protection of persons insured under the policy

---

[5] The "commissioner" is the Commissioner of Commerce and Insurance. Tenn. Code Ann. § 56-1-102(1) (2008).

who are legally entitled to recover compensatory damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness or disease, including death, resulting from injury, sickness or disease.

Tenn. Code Ann. § 56-7-1201(a) (footnote added). Our legislature enacted this statute out of "'public concern over the increasing problem arising from property and personal injury damage inflicted by uninsured and financially irresponsible motorists.'" Garrison, 377 S.W.3d at 665 (quoting Shoffner v. State Farm Mut. Auto Ins. Co., 494 S.W.2d 756, 758 (Tenn. 1972)). Thus, the purpose of the UM Act "'is to provide, within fixed limits, some recompense to innocent persons who receive bodily injury or property damage through the conduct of an uninsured motorist who cannot respond in damages.'" Id. at 665-66 (quoting Shoffner, 494 S.W.2d at 758).

Furthermore, "'[t]he intent and purpose of the Uninsured Motorist Act is to provide protection by making the insurance carrier stand as the insurer of the uninsured motorist.'" Id. at 666 (quoting Stallcup v. Duncan, 684 S.W.2d 643, 646 (Tenn. Ct. App. 1984)). "'Thus, the insured is allowed to purchase uninsured motorist coverage for the protection that he would have had if the alleged tortfeasor had assumed his own financial responsibility by purchasing liability insurance.'" Id. (quoting Stallcup, 684 S.W.2d at 646). "In other words, 'uninsured motorist insurance does not actually insure the uninsured motorist. It insures the insured and assures him of some recovery when the other parties do not have liability insurance.'" Id. (quoting Thompson v. Parker, 606 S.W.2d 538, 540 (Tenn. Ct. App. 1980)). "In short, the purpose of section 56-7-1201(a) is to protect those who purchase motor vehicle liability insurance from those who do not." Id. As stated by the Florida Supreme Court in construing Florida's uninsured motorist legislation, "'[t]he statute is designed for the protection of injured persons, not for the benefit of insurance companies or motorists who cause damage to others.'" Young v. Progressive Se. Ins. Co., 753 So. 2d 80, 83 (Fla. 2000) (emphasis omitted) (quoting Brown v. Progressive Mut. Ins. Co., 249 So. 2d 429, 430 (Fla. 1971)).

Similarly to the Policy, the UM Act defines an uninsured motor vehicle as not including "a motor vehicle [that is] [s]elf-insured within the meaning of the Tennessee Financial Responsibility Law, compiled in title 55, chapter 12, or any similar state or federal law." Tenn. Code Ann. § 56-7-1202(a)(2)(C) (2008). This provision is less ambiguous than the Policy language under consideration because it makes specific reference to a particular piece of legislation. Indeed, IDS relies upon one particular

section of the FR Law[6] as rendering the Rental Car not an uninsured motor vehicle.  We turn, then, to that statute.

Tennessee Code Annotated section 55-12-111 provides as follows:

(a) Any person in whose name more than twenty-five (25) vehicles are registered may qualify as a self-insurer by obtaining a certificate of self-insurance from the commissioner as provided in subsection (c).

. . . .

(c) The commissioner has the discretion, upon the application of the person . . ., to issue a certificate of self-insurance *when satisfied that the person . . . is possessed and will continue to be possessed of an ability to pay any judgments that might be rendered against the person . . . .*

Tenn. Code Ann. § 55-12-111 (emphasis added).  Thus, a certificate of self-insurance issued pursuant to the FR Law establishes that the applying entity has demonstrated its financial ability to satisfy pecuniary judgments that may be rendered against it.  A certificate of self-insurance also excepts a vehicle owner from the FR Law's "requirements of security and revocation."  Id. § 55-12-106(4).

To understand the significance of a certificate of insurance issued to a rental car company, it is necessary to recognize the significance of a piece of federal legislation known as the Graves Amendment.  That federal statute provides as follows:

(a) In general. – An owner of a motor vehicle that rents or leases the vehicle to a person (or an affiliate of the owner) shall not be liable under the

---

[6] The FR Law generally "requires motorists who have been involved in an accident where anyone is killed or injured, or an accident resulting in more than $400 in damage to the property of any one person, to show proof of financial responsibility."  Purkey v. Am. Home Assurance Co., 173 S.W.3d 703, 706 (Tenn. 2005) (citing Tenn. Code Ann. §§ 55-12-105, -139).  "The purpose of Tennessee's Financial Responsibility Law is to protect innocent members of the public from the negligence of motorists on the roads and highways."  Id.  If the commissioner of safety receives a report indicating an accident resulting in injury or property damage totaling more than $400, the commissioner will seek to have the motor vehicle owner's registration revoked unless the owner establishes financial security sufficient to satisfy a judgment.  Tenn. Code Ann. § 55-12-105(a).  In the case of a rental car, the owner is the rental car agency.

law of any State or political subdivision thereof, by reason of being the owner of the vehicle (or an affiliate of the owner), for harm to persons or property that results or arises out of the use, operation, or possession of the vehicle during the period of the rental or lease, if –

> (1) the owner (or an affiliate of the owner) is engaged in the trade or business of renting or leasing motor vehicles; and

> (2) there is no negligence or criminal wrongdoing on the part of the owner (or an affiliate of the owner).

49 U.S.C. § 30106 (2006) ("the Graves Amendment"). The Graves Amendment was intended to stop states from imposing vicarious liability on a car rental company arising from the operation of its vehicles by its rental customers. See Flagler v. Budget Rent A Car System, Inc., 538 F. Supp. 2d 557, 558 (E.D.N.Y. 2008) (citing United States v. Locke, 529 U.S. 89, 109 (2000)) ("There is no question but that the Graves Amendment preempts state laws that impose vicarious liability on businesses that rent or lease motor vehicles."). Although our research has located no Tennessee statute or reported appellate decision imposing vicarious liability on a car rental company arising out of the operation of its vehicles by a rental customer, the Graves Amendment would preempt any such statute or decision.

The Graves Amendment was passed in 2005 and applies to causes of action commenced after August 10, 2005. 49 U.S.C. § 30106(c). Accordingly, Enterprise was not subject to vicarious liability for the actions of its rental customers at the time the commissioner was considering whether to issue the certificate of self-insurance that pertains to this case. That is, at the time Enterprise applied for the certificate of self-insurance under consideration, it was not subject to judgments based on vicarious liability arising from the operation of its cars by its rental customers. We presume that the commissioner was aware of the state of the law at the time he issued the Certificate. See State ex rel. Witcher v. Bilbrey, 878 S.W.2d 567, 576 (Tenn. Ct. App. 1994) (stating that public officials are presumed to know and act in accordance with the law). Accordingly, we conclude that, by issuing the Certificate, the commissioner was satisfied that Enterprise had the ability to pay "any judgments that might be rendered against" it, Tenn. Code Ann. § 55-12-111(c), which did not—indeed, could not—include judgments based on vicarious liability for the actions of Enterprise's rental customers. More to the point, the Certificate does *not* establish that Enterprise was self-insured as to vicarious liability arising from the operation of its vehicles by its rental customers because the commissioner was not considering Enterprise's ability to pay judgments from which it was statutorily immune when deciding whether to issue the Certificate.

Our conclusion that the Certificate was issued without consideration of Enterprise's ability to pay judgments based on its vicarious liability for its rental customers is bolstered by another provision of the FR Law, Tennessee Code Annotated section 55-12-106(10). That provision states as follows:

> Any person licensed and engaged in the business of renting or leasing motor vehicles to be operated on the public highways shall be required *only* to furnish proof of financial ability to satisfy any judgment or judgments rendered against the person in the person's capacity as owner of the motor vehicle, and shall *not* be required to furnish proof of its financial ability to satisfy any judgment or judgments rendered against the person to whom the motor vehicle was rented or leased at the time of the accident[.]

Tenn. Code Ann. § 55-12-106(10) (emphases added). This provision of the FR Law exempts specifically car rental companies such as Enterprise from having to meet its security and revocation requirements *with respect to accidents caused by rental customers*. We note that specific statutory provisions control over general provisions. Lovelace v. Copley, 418 S.W.3d 1, 20 (Tenn. 2013).

Section 55-12-106(10) recognizes that a car rental company such as Enterprise faces two distinct classes of risks arising from the operation of its fleet of rental vehicles. The first class of risks, which we shall refer to as "Owner Risks," includes those accidents that may occur from the operation of an Enterprise vehicle by an Enterprise employee while in the course of her employment, or that may occur from the negligent maintenance of its vehicles. As to Owner Risks, the FR Law contemplates that Enterprise may be liable in its capacity as the owner of the car involved in such an accident. Accordingly, as to Owner Risks, the FR Law requires Enterprise to provide proof of financial security. Enterprise may satisfy this FR Law requirement in any of four methods. See Tenn. Code Ann. § 55-12-105(b). Alternatively, Enterprise may except itself from this requirement as to Owner Risks by qualifying as a "self-insurer." See Tenn. Code Ann. § 55-12-106(4) (exempting owners that qualify as self-insurers from the FR Law's "requirements of security and revocation"). Indeed, that is what Enterprise has done, as demonstrated by the Certificate of Self-Insurance adduced by IDS in the trial court. Accordingly, the record demonstrates that Enterprise qualified as a self-insurer with respect to Owner Risks, and we are justified in concluding that the commissioner was satisfied that Enterprise would be able to pay "any judgments that might be rendered against" it. Tenn. Code Ann. § 55-12-111(c).

The second class of risks, which we shall refer to as "Renter Risks," includes those accidents that may arise from the operation of one of Enterprise's vehicles by one of its

rental customers. As to Renter Risks, section 55-12-106(10) of the FR Law specifically exempts Enterprise from demonstrating proof of financial security. This makes sense because there is simply no legitimate reason to require proof of financial security for potential liabilities that are, in fact, non-existent. See the Graves Amendment. Accordingly, Enterprise need not provide any of the documentation required by section 55-12-105(b) as to Renter Risks. More crucially for this case, as to Renter Risks, Enterprise need not avail itself of the designation of self-insurer in order to avoid the requirements of section 55-12-105(b). Indeed, the designation of "self-insurer" is nonsensical when applied to a class of risks from which Enterprise is statutorily exempt. We reiterate that the very concept of insurance, self or otherwise, applies to risks of loss to which the insured person or entity is subject. Enterprise is not self-insured with respect to Renter Risks because federal law exempts it from vicarious liability for such risks.

We also reiterate our obligation to construe statutes in a manner that "provides for a harmonious operation of the laws" and which avoids an absurd result. Fletcher, 951 S.W.2d at 382. Taking into account the various applicable provisions of state and federal law, and considering the purposes sought to be achieved by those provisions, we hold that the second clause of Tennessee Code Annotated section 55-12-106(10) renders inapplicable the self-insurer provisions of section 55-12-111 of the FR Law as to Renter Risks. Accordingly, we hold that Enterprise is not a self-insurer within the context of section 55-12-111 of the FR Law with respect to Renter Risks.[7]

The instant lawsuit arose from the Defendant's actions while driving a car he rented from Enterprise. The Plaintiff is not asserting a claim of direct liability against Enterprise.[8] Rather, the instant lawsuit involves a liability arising out of a Renter Risk.

---

[7] We also note that section 55-12-106(4) exempts not only owners that qualify as self-insurers from the FR Law's security and revocation requirements, but additionally exempts "any operator of a vehicle owned by a person qualifying as a self-insurer" from those requirements. Tenn. Code Ann. § 55-12-106(4). If Enterprise qualifies as a self-insurer with respect to Renter Risks, then any of Enterprise's rental customers would also be exempt from the security and revocation requirements of the FR Law. This construction of the FR Law would mean that car rental customers could drive on Tennessee's highways with impunity insofar as our FR Law was concerned. We are confident that our Legislature did not intend that rental cars operated in Tennessee could be simultaneously uninsured, yet not meet the statutory definition of uninsured, all while considered self-insured by the rental company's assets to which the injured victim would have no recourse.

[8] The Plaintiff's original complaint named Enterprise as a defendant and alleged that Enterprise (1) negligently entrusted the Rental Car to the Defendant and (2) failed to verify that the Defendant's personal insurance would cover injuries or damages caused by the Defendant while driving the Rental Car. The Plaintiff subsequently voluntarily dismissed with prejudice his claims against Enterprise.

As explained above, Enterprise is not a self-insurer under section 55-12-111 as to Renter Risks. Section 55-12-111 simply has no applicability to Enterprise in this context. Accordingly, the Rental Car was not owned "by a self-insurer under any applicable motor vehicle law" and, therefore, meets the definition of an uninsured motor vehicle under the Policy.

## Conclusion

We hold that IDS is not entitled to summary judgment on the basis that the Rental Vehicle was not an uninsured motor vehicle as defined in the Policy. Accordingly, we reverse the judgment of the Court of Appeals and remand this matter to the trial court for further proceedings consistent herewith. Costs of this appeal are assessed to IDS and its surety, for which execution may issue if necessary.

_____
JEFFREY S. BIVINS, CHIEF JUSTICE