FILED
06/20/2024
Clerk of the
Appellate Courts

IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
April 9, 2024 Session

## LESLIE BURKE, ET AL. V. DEPARTMENT OF CHILDREN'S SERVICES

**Appeal from the Circuit Court for Greene County**
**No. 20CV452     Douglas T. Jenkins, Chancellor[1]**

---

**No. E2023-00904-COA-R3-CV**

---

This is a child custody matter involving the Uniform Child Custody Jurisdiction and Enforcement Act, Tenn. Code Ann. § 36-6-201, *et seq.* ("the UCCJEA"). Leslie Burke and Melissa Burke ("the Burkes") received temporary custody pending adoption of the minor child Jane Doe ("the Child") from an Indiana court ("the Indiana Court"). The Burkes then brought the Child to Tennessee. The Tennessee Department of Children's Services ("DCS") later filed a dependency and neglect action in the Juvenile Court for Greene County ("the Juvenile Court"). DCS alleged that the Child disclosed having been sexually abused in previous adoptive homes, and that the Burkes were not cooperating with individual therapy for the Child. The Juvenile Court ordered the Child's removal into DCS custody. The Child's legal parents in Indiana surrendered their parental rights. DCS moved for guardianship of the Child in the Circuit Court for Greene County ("the Circuit Court"), which the Circuit Court granted. The Burkes sued DCS[2] in the Circuit Court challenging the legal parents' surrender of their parental rights and the Circuit Court's award of full guardianship to DCS. The Burkes and DCS filed motions for summary judgment. The Circuit Court ruled in favor of DCS, dismissing the Burkes' complaint. The Burkes appeal, arguing that the Circuit Court lacked subject matter jurisdiction even though the Indiana Court expressly ceded jurisdiction to Tennessee. We hold, *inter alia*, that Indiana relinquished its exclusive, continuing jurisdiction. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed; Case Remanded**

D. MICHAEL SWINEY, C.J., delivered the opinion of the court, in which JOHN W. MCCLARTY and KRISTI M. DAVIS, JJ., joined.

---

[1] Sitting by interchange.
[2] The Burkes named the Commissioner of DCS in her official capacity.

Agnes Trujillo, Strawberry Plains, Tennessee, for the appellants, Leslie Burke and Melissa Burke.

Jonathan Skrmetti, Attorney General and Reporter; Andrée Sophia Blumstein, Solicitor General; Amber L. Barker, Senior Assistant Attorney General; and Katherine P. Adams, Assistant Attorney General, for the appellee, the Tennessee Department of Children's Services.

## OPINION

## Background

The Child was born in February 2010. In 2018, the Burkes filed a petition in the Indiana Court seeking to adopt the Child, with consent from the Child's legal parents. In September 2018, the Indiana Court granted the Burkes temporary custody of the Child pending adoption. In October 2018, the Burkes brought the Child to Tennessee through a placement under the Interstate Compact on the Placement of Children ("the ICPC").

In August 2019, DCS filed a petition in the Juvenile Court alleging that the Child was dependent and neglected. DCS set out a number of disturbing, specific allegations concerning the Child, including that the Child disclosed she had been sexually abused in prior adoptive homes.[3] DCS alleged further that the Child exhibited serious behavioral issues such as self-harming; that the Child was on medication and undergoing therapy; and that the Child had been adopted multiple times across state lines. According to DCS, the Burkes refused to let the Child undergo individual therapy as recommended; instead, the Child looked to Mr. Burke for answers to the therapist's questions. In addition, DCS alleged that the Burkes admitted to "purchasing" the Child in Indiana. DCS asked that the Burkes be required to cooperate with mental health services for the Child. The Juvenile Court ordered the Child into DCS custody based on an immediate threat to her health or safety.

In October 2019, the Child's legal parents surrendered their parental rights to the Child in the Circuit Court. Meanwhile, DCS had filed a motion for full guardianship of the Child in the Juvenile Court, which was granted. DCS subsequently asked the Juvenile Court to set aside this order, noting a possible jurisdictional conflict. Regarding the possible jurisdictional conflict with Indiana, a call took place on the record between the Juvenile Court and the Indiana adoption court judge. The following exchange occurred:

---

[3] To be clear, DCS did not allege that the Child disclosed she had been sexually abused by the Burkes.

JUDGE BAILEY [of the Juvenile Court]: . . . But as we had talked last week, we just wanted to go on the record here about [the Child] to confirm -- or to make sure that Indiana is not interested in having her come back to Indiana.

JUDGE CASATI [Indiana judge]: That is correct.

JUDGE BAILEY: Okay. And so you're agreeing that here in Tennessee, our Department of Children's Services can proceed with her in their custody, and proper placements and treatments for her, right?

JUDGE CASATI: Agreed, yes.

JUDGE BAILEY: Okay, fantastic. Well, we appreciate you taking the time to talk to us this morning, and hopefully we can get some help for this young lady. Ms. Thomas, the Department's attorney, did you have anything you wanted to ask him?

MS. THOMAS: Just if we can do an Order, Your Honor, releasing jurisdiction to Tennessee.

JUDGE BAILEY: Okay.

JUDGE CASATI: I cannot hear her.

JUDGE BAILEY: Right. She wanted to know if we can do an Order that I will sign where we spoke with you and you agreed to release jurisdiction to Tennessee, and you're in agreement with that, right?

JUDGE CASATI: Absolutely.

In November 2019, the Juvenile Court entered an order stating in relevant part that Indiana did not want the Child placed back in that state and "[t]hat Jurisdiction of the child shall be relinquished from the Adoption Court in Hamilton County, Indiana and all matters involving this child shall remain in the Jurisdiction of the Greene County, Tennessee until further order of the Court." DCS thereafter moved for guardianship of the Child in the Circuit Court. In December 2019, the Circuit Court granted DCS's motion for guardianship of the Child. DCS proceeded to file a notice of non-suit regarding its dependency and neglect action in the Juvenile Court.

In March 2020, the Burkes sued DCS in the Circuit Court. The Burkes sought, among other things, "a declaration of rights challenging the validity of the surrender of parental rights and this Court's full guardianship order in favor of [DCS]." The Burkes asserted, in effect, that DCS wrongly undercut the pending adoption proceedings in Indiana where the legal parents already had consented to the Child's adoption by the Burkes.

In October 2020, the Burkes filed a motion for summary judgment. DCS in turn filed a motion to dismiss. In February 2021, the Circuit Court denied both parties' motions. The Circuit Court stated, in part:

c) The Court concludes that the UCCJEA was applicable to the proceedings in the juvenile court and that the juvenile court was vested with jurisdictional authority to enter orders for the protection of the child pursuant to *Tenn. Code Ann. 36-6-219 (2019)*;

d) The Court further concludes that the procedures for resolving the jurisdictional conflict between the two (2) states were followed by the Greene County Juvenile Court and that the order entered thereafter memorialized the resolution between the two (2) courts that Tennessee would assume jurisdiction of all matters related to the child; that this Court is satisfied that the Greene County Juvenile Court's order memorializing the jurisdictional conference is sufficient for the relinquishment of jurisdiction over the child by the Indiana Court; and,

e) That this Court acted within its authority by entering the full guardianship order in favor of the Defendant, DCS and such order is [a] valid and binding order.

DCS then filed an amended motion to dismiss or, alternatively, for summary judgment. The Burkes renewed their motion for summary judgment. Following a hearing, the parties submitted their proposed findings of fact and conclusions of law. In May 2023, the Circuit Court entered its memorandum opinion dismissing the Burkes' complaint with prejudice. The Circuit Court stated that "[t]he State's dispositive motion is granted," "[t]he Burkes' dispositive motion is overruled," and "[t]he Burkes do not have standing to request a custody hearing and the Court so declares." In June 2023, the Circuit Court entered an order incorporating the findings of its memorandum opinion and clarifying that this was a final judgment. The Burkes timely appealed to this Court.

## Discussion

The Burkes raise three lengthy, rather sprawling issues on appeal. In its responsive brief, DCS consolidates these into two clearer dispositive issues, a format we draw from. Therefore, although not stated exactly as such, the Burkes raise the following issues: 1) whether the Circuit Court erred in dismissing the Burkes' complaint on the basis that it had subject matter jurisdiction to accept the Child's legal parents' surrenders and to enter a guardianship order in favor of DCS; and 2) whether the Circuit Court erred in dismissing the Burkes' claim challenging the legal parents' surrender of parental rights under Tenn. Code Ann. § 36-1-111.

This case was resolved by summary judgment. A party is entitled to summary judgment only if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ.

-4-

P. 56.04.  As it happens, the issues on appeal hinge on statutory interpretation and are purely legal in nature.[4]  As our Supreme Court has instructed:

> Issues of statutory construction present questions of law that we review de novo with no presumption of correctness.  *Martin v. Powers*, 505 S.W.3d 512, 518 (Tenn. 2016).  The primary goal of statutory interpretation is to carry out legislative intent without expanding or restricting the intended scope of the statute.  *State v. Smith*, 484 S.W.3d 393, 403 (Tenn. 2016) (citations omitted).  In determining legislative intent, we first must look to the text of the statute and give the words of the statute "their natural and ordinary meaning in the context in which they appear and in light of the statute's general purpose."  *Mills v. Fulmarque, Inc.*, 360 S.W.3d 362, 368 (Tenn. 2012) (citations omitted).  When a statute's language is clear and unambiguous, we enforce the statute as written; we need not consider other sources of information.  *Frazier v. State*, 495 S.W.3d 246, 249 (Tenn. 2016).  We apply the plain meaning of a statute's words in normal and accepted usage without a forced interpretation.  *Baker v. State*, 417 S.W.3d 428, 433 (Tenn. 2013).  We do not alter or amend statutes or substitute our policy judgment for that of the Legislature.  *Armbrister v. Armbrister*, 414 S.W.3d 685, 704 (Tenn. 2013).

*Coleman v. Olson*, 551 S.W.3d 686, 694 (Tenn. 2018).  Thus, we extend no presumption of correctness to the Circuit Court's legal conclusions.

The Burkes contend that the Circuit Court lacked subject matter jurisdiction either to accept the surrenders of parental rights executed by the Child's legal parents or to award full guardianship of the Child to DCS.  Regarding a court's authority to adjudicate a matter, "[t]he lack of subject matter jurisdiction is so fundamental that it requires dismissal whenever it is raised and demonstrated."  *First American Trust v. Franklin-Murray*, 59 S.W.3d 135, 141 (Tenn. Ct. App. 2001).  "[P]arties cannot confer subject matter jurisdiction on a trial or an appellate court by appearance, plea, consent, silence, or waiver."  *Id*. at 140-41.  The UCCJEA, a child custody jurisdictional statute which has been adopted by Tennessee and other states, is implicated in this case.  Regarding the three-part analysis courts employ under the UCCJEA when modifying another state's child custody determination, we have discussed as follows:

> Under the UCCJEA, a court confronted with a petition to modify another state's child custody determination must undertake a three-part

---

[4] The Burkes acknowledge that "[t]he questions before this Court are purely legal with material facts undisputed."

threshold jurisdictional analysis. First, the court must decide whether the state that made the initial custody determination retains exclusive, continuing jurisdiction. Tenn. Code Ann. § 36-6-218(1)-(2). Second, the court must decide whether it would have jurisdiction to make an initial custody determination under the present circumstances. Tenn. Code Ann. § 36-6-218. The court has subject matter jurisdiction to modify the other state's child custody determination only if the other state has lost its exclusive, continuing jurisdiction or declined to exercise it and the court of the new state would have jurisdiction to make an initial custody determination under the present circumstances. Once a court determines that it has subject matter jurisdiction under the first two steps of the jurisdictional analysis, it must then proceed to the third step and determine whether it may or must decline to exercise its modification jurisdiction on one of the three grounds specified in the UCCJEA. Tenn. Code Ann. §§ 36-6-221 to -223.

*Staats v. McKinnon*, 206 S.W.3d 532, 547-48 (Tenn. Ct. App. 2006) (footnote omitted).

In *Staats*, we also discussed how a state loses its exclusive, continuing jurisdiction under the UCCJEA:

A state that has made or modified a child custody determination in accordance with the UCCJEA's jurisdictional requirements retains exclusive, continuing jurisdiction over the determination until one of two things occurs. First, a state loses exclusive, continuing jurisdiction if a court of that state determines that neither the child nor the child and at least one parent or person acting as a parent continues to have a significant connection with the state and that substantial evidence concerning the child's care, protection, training, and personal relationships is no longer available in the state. Tenn. Code Ann. § 36-6-217(a)(1), -218(1). Second, a state loses exclusive, continuing jurisdiction if a court of any state determines that "the child, the child's parents, and any person acting as a parent do not presently reside" in the state. Tenn. Code Ann. §§ 36-6-217(a)(2), -218(2).

*Staats*, 206 S.W.3d at 548.

The issues on appeal are very statute-oriented, and several provisions of the UCCJEA are pertinent. Concerning a Tennessee court's ability to make an initial custody determination, Tenn. Code Ann. § 36-6-216 provides:

(a) Except as otherwise provided in § 36-6-219, a court of this state has jurisdiction to make an initial child custody determination only if:

-6-

(1) This state is the home state of the child on the date of the commencement of the proceeding, or was the home state of the child within six (6) months before the commencement of the proceeding and the child is absent from this state but a parent or person acting as a parent continues to live in this state;

(2) A court of another state does not have jurisdiction under subdivision (a)(1), or a court of the home state of the child has declined to exercise jurisdiction on the ground that this state is the more appropriate forum under § 36-6-221 or § 36-6-222, and:

(A) The child and the child's parents, or the child and at least one (1) parent or a person acting as a parent, have a significant connection with this state other than mere physical presence; and

(B) Substantial evidence is available in this state concerning the child's care, protection, training, and personal relationships;

(3) All courts having jurisdiction under subdivision (a)(1) or (a)(2) have declined to exercise jurisdiction on the ground that a court of this state is the more appropriate forum to determine the custody of the child under § 36-6-221 or § 36-6-222; or

(4) No court of any other state would have jurisdiction under the criteria specified in subdivision (a)(1), (a)(2), or (a)(3).

(b) Subsection (a) is the exclusive jurisdictional basis for making a child-custody determination by a court of this state.

(c) Physical presence of, or personal jurisdiction over, a party or a child is not necessary or sufficient to make a child-custody determination.

Tenn. Code Ann. § 36-6-216 (West eff. August 11, 2010).

The term "home state" is defined as follows:

(7) "Home state" means the state in which a child lived with a parent or a person acting as a parent for at least six (6) consecutive months immediately before the commencement of a child custody proceeding. In the case of a child less than six (6) months of age, "home state" means the state in which

the child lived from birth with any of the persons mentioned.  A period of temporary absence of any of the mentioned persons is part of the period[.]

Tenn. Code Ann. § 36-6-205(7).

Regarding jurisdiction in the context of previously commenced proceedings, Tenn. Code Ann. § 36-6-221 states:

(a) Except as otherwise provided in § 36-6-219, a court of this state may not exercise its jurisdiction under this part if, at the time of the commencement of the proceeding, a proceeding concerning the custody of the child has been commenced in a court of another state having jurisdiction substantially in conformity with this part, unless the proceeding has been terminated or is stayed by the court of the other state because a court of this state is a more convenient forum under § 36-6-222.

(b) Except as otherwise provided in § 36-6-219, a court of this state, before hearing a child custody proceeding, shall examine the court documents and other information supplied by the parties pursuant to § 36-6-224.  If the court determines that a child custody proceeding has been commenced in a court in another state having jurisdiction substantially in accordance with this part, the court of this state shall stay its proceeding and communicate with the court of the other state.  If the court of the state having jurisdiction substantially in accordance with this part does not determine that the court of this state is a more appropriate forum, the court of this state shall dismiss the proceeding.

(c) In a proceeding to modify a child custody determination, a court of this state shall determine whether a proceeding to enforce the determination has been commenced in another state.  If a proceeding to enforce a child custody determination has been commenced in another state, the court may:

(1) Stay the proceeding for modification pending the entry of an order of a court of the other state enforcing, staying, denying, or dismissing the proceeding for enforcement;

(2) Enjoin the parties from continuing with the proceeding for enforcement; or

(3) Proceed with the modification under conditions it considers appropriate.

Tenn. Code Ann. § 36-6-221.

With respect to when a Tennessee court may decline to exercise jurisdiction, Tenn. Code Ann. § 36-6-222 provides:

(a) A court of this state which has jurisdiction under this part to make a child-custody determination may decline to exercise its jurisdiction at any time if it determines that it is an inconvenient forum under the circumstances and that a court of another state is a more appropriate forum. The issue of inconvenient forum may be raised upon motion of a party, the court's own motion, or request of another court.
(b) Before determining whether it is an inconvenient forum, a court of this state shall consider whether it is appropriate for a court of another state to exercise jurisdiction. For this purpose, the court shall allow the parties to submit information and shall consider all relevant factors, including:
(1) The length of time the child has resided outside this state;
(2) The distance between the court in this state and the court in the state that would assume jurisdiction;
(3) The relative financial circumstances of the parties;
(4) Any agreement of the parties as to which state should assume jurisdiction;
(5) The nature and location of the evidence required to resolve the pending litigation, including testimony of the child;
(6) The ability of the court of each state to decide the issue expeditiously and the procedures necessary to present the evidence;
(7) Whether domestic violence has occurred and is likely to continue in the future and which state could best protect the parties and the child; and
(8) The familiarity of the court of each state with the facts and issues in the pending litigation.
(c) If a court of this state determines that it is an inconvenient forum and that a court of another state is a more appropriate forum, it shall stay the proceedings upon condition that a child-custody proceeding be promptly commenced in another designated state and may impose any other condition the court considers just and proper.
(d) A court of this state may decline to exercise its jurisdiction under this part if a child-custody determination is incidental to an action for divorce or another proceeding while still retaining jurisdiction over the divorce or other proceeding.

Tenn. Code Ann. § 36-6-222.

Finally, Tenn. Code Ann. § 36-6-223 provides:

(a) Except as otherwise provided in § 36-6-219, or by other law of this state, if a court of this state has jurisdiction under this part because a person seeking to invoke its jurisdiction has engaged in unjustifiable conduct, the court shall decline to exercise its jurisdiction unless:

(1) The parents and all persons acting as parents have acquiesced in the exercise of jurisdiction;
(2) A court of the state otherwise having jurisdiction under §§ 36-6-216--36-6-218 determines that this state is a more appropriate forum under § 36-6-222; or
(3) No court of any other state would have jurisdiction under the criteria specified in §§ 36-6-216--36-6-218.

(b) If a court of this state declines to exercise its jurisdiction pursuant to subsection (a), it may fashion an appropriate remedy to ensure the safety of the child and prevent a repetition of the unjustifiable conduct, including staying the proceeding until a child custody proceeding is commenced in a court having jurisdiction under §§ 36-6-216--36-6-218.

(c) If a court dismisses a petition or stays a proceeding because it declines to exercise its jurisdiction pursuant to subsection (a), it shall assess against the party seeking to invoke its jurisdiction necessary and reasonable expenses including costs, communication expenses, attorney's fees, investigative fees, expenses for witnesses, travel expenses, and child care during the course of the proceedings, unless the party from whom fees are sought establishes that the assessment would be clearly inappropriate.

Tenn. Code Ann. § 36-6-223.

We now turn to the issue of whether the Circuit Court erred in dismissing the Burkes' complaint on the basis that it had subject matter jurisdiction to accept the Child's legal parents' surrenders and to enter a guardianship order in favor of DCS. The thrust of the Burkes' argument is that Indiana never effectively relinquished its exclusive, continuing jurisdiction in this matter. The Burkes note that the Indiana Court granted them custody of the Child in the first place. In effect, the Burkes argue that DCS did an end run around the adoption proceedings in the state of Indiana to achieve its desired outcome in Tennessee. According to the Burkes, Tennessee could not lawfully assume jurisdiction

unless the Indiana Court effectively relinquished its jurisdiction. The Burkes say Indiana never did.

The Burkes also cite, among other sources, Comment 1 of Tenn. Code Ann. § 36-6-217, which states as relevant: "The use of the phrase 'a court of this State' under subsection (a)(1) makes it clear that the original decree State is the sole determinant of whether jurisdiction continues. A party seeking to modify a custody determination must obtain an order from the original decree State stating that it no longer has jurisdiction." *See also Stack v. Stack*, No. M2014-02439-COA-R3-CV, 2016 WL 4186839, at *5 (Tenn. Ct. App. Aug. 4, 2016), *no appl. perm. appeal filed* ("In the absence of an order from the Montana court, jurisdiction to modify the Montana court's child-custody determination could only be made under the second subsection of the jurisdictional statute."). Thus, it is the Burkes' position that an order by the Indiana Court was necessary to cede jurisdiction. The record contains no such order from Indiana. In addition, the Burkes say that the Indiana Court was obliged to consider a slew of factors under Indiana law before deciding another forum was more convenient. *See* Indiana Code § 31-21-5-8(b). The Burkes contend that the statements made by the Indiana judge purporting to cede jurisdiction were not enough for Indiana to relinquish jurisdiction. Finally, the Burkes point out that the Child was placed in Tennessee under the ICPC. They state that Indiana remains responsible for the Child.

In determining whether the Burkes are right, we look to the instructive case of *In re Apex R.*, 577 S.W.3d 181 (Tenn. Ct. App. 2018), a parental rights termination case in which the appellant father challenged the Tennessee trial court's subject matter jurisdiction when Alabama had made the initial custody determination. *Id*. at 185. We determined that Alabama lost its exclusive, continuing jurisdiction despite the fact that the child's mother still lived in Alabama. *Id*. at 202. We explained:

> Alabama's connection to this case is now so tenuous as to be non-existent. The only parent remaining in Alabama wishes to surrender her parental rights. Father only moved to Alabama in the first place to be closer to the legal proceedings there but no longer lives in Alabama. The relationship between Mother and the Child now is so attenuated that there is no longer any significant connection to or substantial evidence in Alabama. To be clear, Mother could not stipulate to subject matter jurisdiction. Instead, we hold that the fact of Mother's consent to termination and adoption nullifies her continued residence in Alabama as a barrier to the Trial Court's exercise of subject matter jurisdiction. There is no prospect here of the kind of jurisdictional competition between states the UCCJEA was designed to prevent. We conclude that Alabama no longer retains exclusive and continuing jurisdiction in this case.

-11-

*In re Apex R.*, 577 S.W.3d at 202.

In the present case, the Burkes brought the Child to Tennessee in October 2018. The Child has remained in Tennessee since then. Indeed, all relevant parties in this case are based in Tennessee. The Child's now-former legal parents remain in Indiana, but they surrendered their parental rights. Notably, in *In re Apex R.*, the mother in Alabama had not even executed a surrender of her rights, but only submitted an oath expressing her desire to do so. *In re Apex R.*, 577 S.W.3d at 202. The Burkes fail to articulate how Indiana has retained any significant connection to this case in the here and now. The UCCJEA's purpose is to prevent jurisdictional conflict. If there is no jurisdictional conflict or even the prospect of one, the UCCJEA is not a means of freezing another state's jurisdiction in place no matter what else has transpired in the case since the prior custody determination.

Beyond the sheer lack of any ongoing connection to the case, Indiana expressly ceded jurisdiction to Tennessee. The Burkes accurately cite the comment to Tenn. Code Ann. § 36-6-217, and our opinion in the unpublished case of *Stack v. Stack*, for the proposition that a party seeking a custody modification must obtain an order from the original decree state saying it no longer has jurisdiction. However, neither the comment to Tenn. Code Ann. § 36-6-217 nor *Stack* are controlling given the factual and procedural posture here. Moreover, we are satisfied that the procedures the lower courts undertook complied with the UCCJEA's requirements. Here, the Indiana Court stated explicitly on the record that it ceded jurisdiction to the Tennessee courts, that it agreed to the entry of an order in the Juvenile Court stating that the Indiana Court "agreed to release jurisdiction to Tennessee . . . ," and the Juvenile Court entered an order reflecting that.[5] Accepting the Burkes' argument would mean that if the original decree state ceded jurisdiction on the record and agreed to an order being entered in the Tennessee Court stating that it relinquishes jurisdiction but for whatever reason simply failed to enter a written order to that effect, Tennessee would be helpless to make a custody determination regarding a child living in its borders no matter the conditions in which that child is living. That cannot be the intent of the UCCJEA.

Additionally, to the extent the Burkes rely on the ICPC, that reliance is misplaced. The ICPC does not govern jurisdiction in child custody cases. *See In re Apex R.*, 577 S.W.3d at 198-99 (concluding that the UCCJEA, not the ICPC, governs interstate jurisdictional issues in child custody modifications).[6] In sum, Indiana expressly relinquished and, in any event, lost its exclusive, continuing jurisdiction in this matter.

---

[5] The Burkes do not dispute the fact that the Indiana Court said what it said, only that the remarks amounted to an effective relinquishment of jurisdiction.

[6] DCS also argues that surrenders of parental rights are not subject to the UCCJEA as they are neither a

With Indiana having lost its exclusive, continuing jurisdiction, we consider whether Tennessee had jurisdiction to make an initial custody determination under present circumstances. *Staats*, 206 S.W.3d at 547-48. This question hinges on the Child's "home state." Here, the Child had lived in Tennessee with the Burkes for over six months, from October 2018 through August 2019 and removal into DCS custody, followed by the award of full guardianship to DCS in December 2019. Thus, Tennessee was the Child's home state, and Tennessee had jurisdiction to make an initial custody determination. Finally, under the undisputed facts, there simply was no reason for Tennessee to decline jurisdiction. The Child lives in Tennessee now and has no further connection to Indiana. We, therefore, hold that the Circuit Court had subject matter jurisdiction to award full guardianship of the Child to DCS.

The next and final issue we address is whether the Circuit Court erred in dismissing the Burkes' claim challenging the legal parents' surrender of parental rights under Tenn. Code Ann. § 36-1-111. The Burkes contend that, as prospective adoptive parents of the Child, they have standing to attempt to regain legal and physical custody of the Child. The Burkes cite to Tenn. Code Ann. § 36-1-111, which states as relevant:

(q)(1) Failure to fully comply with this section or failure to file the surrender executed pursuant to subsection (g), (h), or (i) within the fifteen-day period required by subsection (n), or failure to obtain an order of guardianship in accordance with this section within thirty (30) days of the date the surrender is executed or filed, or within thirty (30) days of the date parental consent is filed, shall be grounds for removal of the child from the physical care and control of the person, the department, or licensed child-placing agency receiving the surrender; provided, that this shall not apply when the persons, the department or the licensed child-placing agency have legal custody or partial guardianship under an order of a court entered prior to the execution of the surrender or parental consent or pursuant to any statutory authority giving custody to the department or licensed child-placing agency.

(2) A sworn complaint concerning the grounds alleged in subdivision (q)(1) and concerning the best interests of a child for whom a surrender is sought or on whom a surrender or parental consent was executed or guardianship order entered, or which complaint otherwise seeks to present proof concerning the best interests of the child, may be filed by any person, the department, a licensed child-placing agency, or a licensed clinical social worker.

child custody proceeding nor a child custody determination. Given Indiana's clear relinquishment/loss of jurisdiction, we deem it unnecessary to address that argument in this Opinion.

(3) The complaint may be filed in the court where the surrender was executed or filed or where the adoption petition containing a parental consent was filed. If the surrender was not executed or filed in Tennessee or if the surrender was not executed before a court or if the surrender was not filed at all, then the complaint may be filed in the circuit, chancery, or juvenile court in the county where the child resides.

Tenn. Code Ann. § 36-1-111(q).[7]

In response, DCS relies on language in Tenn. Code Ann. § 36-1-111(q)(1) stating that "this shall not apply" to scenarios whereby "the persons, the department or the licensed child-placing agency have legal custody or partial guardianship under an order of a court entered prior to the execution of the surrender or parental consent or pursuant to any statutory authority giving custody to the department or licensed child-placing agency." DCS asserts that it had legal custody of the Child in October 2019 by virtue of the Juvenile Court's August 2019 order of removal and grant of temporary custody.

Nevertheless, the Burkes challenge the underlying validity of the Juvenile Court's order. They contend that the Juvenile Court had no authority to grant DCS legal custody of the Child. The Burkes argue that "a juvenile court is only authorized to order a child 'be removed' from the physical custody of a parent or caregiver to protect the child but is **not** authorized to transfer legal custodial rights prior to an adjudicatory hearing. *See* **Tenn. Code Ann. § 37-1-117(b)(1) (2019).** The removal is to endure 'pending further investigation and hearing.' *Id.*" Under Title 37, custody is defined as follows:

"Custody" means the control of actual physical care of the child and includes the right and responsibility to provide for the physical, mental, moral and emotional well-being of the child. "Custody," as herein defined, relates to those rights and responsibilities as exercised either by the parents or by a person or organization granted custody by a court of competent jurisdiction. "Custody" shall not be construed as the termination of parental rights set forth in § 37-1-147. "Custody" does not exist by virtue of mere physical possession of the child[.]

Tenn. Code Ann. § 37-1-102(b)(9).

We respectfully disagree with the Burkes' theory of bifurcated custody in this instance. It is a stretch with regard to the definition of custody, and there is no textual

---

[7] Formerly lettered (u).

support for the Burkes' interpretation.  What is more, as DCS argues, it would be absurd if the physical custodian of a child could not make critical decisions concerning that child. The child would be in an untenable limbo.  "In construing statutes, Tennessee law provides that courts are to avoid a construction that leads to absurd results." *State v. Welch*, 595 S.W.3d 615, 621 (Tenn. 2020).  The construction put forward by the Burkes on this argument would produce an absurd result.  We therefore conclude that the Juvenile Court was authorized to award legal custody of the Child to DCS.

Continuing their argument, the Burkes state that the Juvenile Court lacked subject matter jurisdiction because of Indiana's continuing, exclusive jurisdiction.  DCS in turn argues that the Juvenile Court properly invoked temporary emergency jurisdiction. Regarding temporary emergency jurisdiction, Tenn. Code Ann. § 36-6-219 provides:

(a) A court of this state has temporary emergency jurisdiction if the child is present in this state and the child has been abandoned or it is necessary in an emergency to protect the child because the child, or a sibling or parent of the child, is subjected to or threatened with mistreatment or abuse.

(b) If there is no previous child custody determination that is entitled to be enforced under this part and a child custody proceeding has not been commenced in a court of a state having jurisdiction under §§ 36-6-216--36-6-218, a child-custody determination made under this section remains in effect until an order is obtained from a court of a state having jurisdiction under §§ 36-6-216--36-6-218.  If a child custody proceeding has not been or is not commenced in a court of a state having jurisdiction under §§ 36-6-216--36-6-218, a child custody determination made under this section becomes a final determination, if it so provides and this state becomes the home state of the child.

(c) If there is a previous child custody determination that is entitled to be enforced under this part, or a child-custody proceeding has been commenced in a court of a state having jurisdiction under §§ 36-6-216--36-6-218, any order issued by a court of this state under this section must specify in the order a period that the court considers adequate to allow the person seeking an order to obtain an order from the state having jurisdiction under §§ 36-6-216--36-6-218.  The order issued in this state remains in effect until an order is obtained from the other state within the period specified or the period expires.

(d) A court of this state which has been asked to make a child-custody determination under this section, upon being informed that a child-custody

proceeding has been commenced in, or a child-custody determination has been made by, a court of a state having jurisdiction under §§ 36-6-216--36-6-218, shall immediately communicate with the other court. A court of this state which is exercising jurisdiction pursuant to §§ 36-6-216--36-6-218, upon being informed that a child custody proceeding has been commenced in, or a child-custody determination has been made by, a court of another state under a statute similar to this section shall immediately communicate with the court of that state to resolve the emergency, protect the safety of the parties and the child, and determine a period for the duration of the temporary order.

Tenn. Code Ann. § 36-6-219.

Citing our Supreme Court's decision in *Button v. Waite*, 208 S.W.3d 366 (Tenn. 2006), the Burkes contend that "a disagreement regarding ongoing mental health treatment, particularly where the dispute involves family vs individual therapy cannot be considered emergent." In *Button*, the Tennessee Supreme Court stated: "The heart of the controversy relates to the Hawaii trial court's finding that Mr. Waite inappropriately touched Carly and its order terminating the services of Carly's Tennessee therapist and providing an alternate therapist for her." 208 S.W.3d at 367. The Supreme Court concluded as relevant that "Tennessee Code Annotated section 36-6-219(a) contemplates a threat of immediate mistreatment or abuse to the child, and we now adopt this standard. We conclude that the selection of an alternate therapist for Carly does not pose an immediate threat of mistreatment or abuse." *Id*. at 370.

Here, DCS made detailed allegations, the gist of which were that the Child has been adopted multiple times in different states; that there was concern the Child had been sexually abused in past homes; that the Child had ongoing severe behavioral problems; and that the Burkes would not let the Child speak to a therapist individually. The alleged refusal to allow the Child to speak to a therapist individually raises obvious concerns that the Child was being prevented from revealing exactly what happened to her. Viewed as a whole, DCS's allegations reflect an extremely troubled and unstable life on the part of the Child, going from home to home in multiple states, and having possibly been sexually abused in the process. These allegations greatly exceed a dispute over choice of therapist. We conclude that DCS's allegations were specific enough, and immediate enough in nature, to warrant the Juvenile Court's invocation of temporary emergency jurisdiction.

The Burkes argue further that, even if the Juvenile Court had temporary emergency jurisdiction, its custody order was invalid for failure to specify how long its temporary emergency jurisdiction would last. *See* Tenn. Code Ann. § 36-6-219. The Burkes cite *Staats v. McKinnon* for the proposition that "emergency jurisdiction is inherently

temporary in nature and does not, as a general rule, authorize courts to make permanent child custody decisions." 206 S.W.3d at 546, n. 31. While the Burkes correctly state the proposition, they are incorrect in saying that it necessitates reversal. In *In re Serenity W. M.*, No. E2014-01802-COA-R3-JV, 2015 WL 4485466, at *6 (Tenn. Ct. App. July 23, 2015), *no appl. perm. appeal filed*, we upheld the trial court's exercise of emergency jurisdiction even though "the resulting order of enforcement/temporary custody order did not specify when the trial court's emergency jurisdiction would end." We addressed this deficiency by modifying the trial court's order "to provide that the trial court's emergency jurisdiction ended following thirty days after its entry." *Id*. Thus, while the Juvenile Court should have specified the duration of its emergency jurisdiction, its failure to do so was not *ipso facto* fatal to the validity of the order.

In their reply brief, the Burkes state: "[DCS] inexplicably argues that the Indiana court entered no orders that 'modified or competed with the juvenile court's order' as if the Indiana court is required to engage in a jurisdictional wrestling match in order to curtail a juvenile court unwilling to adhere to jurisdictional law." However, in point of fact, there was no jurisdictional wrestling match. The Juvenile Court conferred with its Indiana counterpart, and Indiana expressly relinquished exclusive, continuing jurisdiction. The interstate comity envisioned by the UCCJEA was observed. Beyond the express relinquishment of jurisdiction, Indiana no longer has any substantial link to this case. Indeed, Indiana's "connection to this case is now so tenuous as to be non-existent." *In re Apex R.*, 577 S.W.3d at 202. Thus, there was no impediment to Tennessee courts taking the actions they did. We hold that the Juvenile Court properly exercised temporary emergency jurisdiction. We affirm the Circuit Court's judgment dismissing the Burkes' complaint.

## Conclusion

The judgment of the Circuit Court is affirmed, and this cause is remanded to the Circuit Court for collection of the costs below. The costs on appeal are assessed against the Appellants, Leslie Burke and Melissa Burke, and their surety, if any.

_____
D. MICHAEL SWINEY, CHIEF JUDGE