# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
### April 16, 2025 Session

## ROBERT BATES, ET AL. V. CITY OF CHATTANOOGA, ET AL.

### Appeal from the Circuit Court for Hamilton County
### No. 23C159    Kyle E. Hedrick, Judge

___

### No. E2024-00857-COA-R3-CV

___

This appeal involves statutory construction.  Robert Bates and Laurel Diane Bates ("Mr. Bates" and "Ms. Bates," "Plaintiffs" collectively) sued the City of Chattanooga, Individually and d/b/a the Brainerd Golf Course ("Defendant") in the Circuit Court for Hamilton County ("the Trial Court"), alleging personal injuries, loss of services, and loss of consortium stemming from Mr. Bates' fall on Defendant's golf course.  Defendant filed a motion for summary judgment relying on the Tennessee Recreational Use Statute ("the TRUS"), Tenn. Code Ann. § 70-7-101, *et seq*., which provides immunity to landowners who open their property to recreational use.  The Trial Court held that Defendant, the landowner, was immune under the TRUS because Mr. Bates was on Defendant's property to play golf, and golf is comparable to the non-exclusive list of recreational activities found at Tenn. Code Ann. § 70-7-102.  No exception to the TRUS was found to apply.  Plaintiffs appeal, arguing that golf is not an activity like those listed at Section 102 of the TRUS. Plaintiffs argue further that the fact Mr. Bates paid to play on Defendant's golf course means Defendant is not entitled to immunity.  We hold, *inter alia*, that golf is sufficiently comparable to Section 102 enumerated activities, particularly hiking, sightseeing, and target shooting, such that Defendant is entitled to immunity under the TRUS.  In addition, the fact that Mr. Bates paid to play on Defendant's golf course is not dispositive because the TRUS has no applicable consideration exception.  We affirm.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed; Case Remanded

D. MICHAEL SWINEY, C.J., delivered the opinion of the court, in which JOHN W. MCCLARTY and KRISTI M. DAVIS, JJ., joined.

Richard A. Schulman, Eric J. Oliver, and Louis J. Bernsen, Chattanooga, Tennessee, for the appellants, Robert Bates and Laurel Diane Bates.

Andrew S. Trundle, Azarius "Zack" Yanez, Gregory E. Glass, and Christopher McKnight, Chattanooga, Tennessee, for the appellee, the City of Chattanooga, Individually and d/b/a the Brainerd Golf Course.

## OPINION

## Background

On September 23, 2022, Mr. Bates was a paying patron at Brainerd Golf Course, a golf course owned by the City of Chattanooga. While patronizing the golf course, Mr. Bates fell down some steps. In January 2023, Plaintiffs sued Defendant in the Trial Court. Plaintiffs alleged that Mr. Bates suffered personal injuries because of Defendant's negligence in upkeep and maintenance of the course. Plaintiffs also alleged loss of services and loss of consortium with respect to Ms. Bates. Defendant filed an answer in opposition asserting the TRUS, Tenn. Code Ann. § 70-7-101, *et seq*. "The TRUS provides an affirmative defense to a landowner when a person is injured while engaging in a recreational activity on the landowner's property." *Beckham v. City of Waynesboro*, No. M2023-00654-COA-R3-CV, 2024 WL 2153536, at *3 (Tenn. Ct. App. May 14, 2024), *perm. app. denied Sept. 12, 2024*. In April 2024, Defendant filed a motion for summary judgment, again arguing it was entitled to immunity under the TRUS. Defendant cited Section 102 of the TRUS, which provides as relevant:

(a) The landowner, lessee, occupant, or any person in control of land or premises owes no duty of care to keep such land or premises safe for entry or use by others for such recreational activities as hunting, fishing, trapping, camping, water sports, white water rafting, canoeing, hiking, sightseeing, animal riding, bird watching, dog training, boating, caving, fruit and vegetable picking for the participant's own use, nature and historical studies and research, rock climbing, skeet and trap shooting, sporting clays, shooting sports, and target shooting, including archery and shooting range activities, skiing, off-road vehicle riding, and cutting or removing wood for the participant's own use, nor shall such landowner be required to give any warning of hazardous conditions, uses of, structures, or activities on such land or premises to any person entering on such land or premises for such purposes, except as provided in § 70-7-104.

Tenn. Code Ann. § 70-7-102(a) (West eff. April 6, 2015). Golf is not a listed activity. Nevertheless, it was and remains Defendant's position that golf is comparable to the non-exclusive list of activities contained in Section 102. In June 2024, following a hearing, the

Trial Court entered an order granting summary judgment to Defendant.  In its order, the Trial Court stated, in pertinent part:

> There are three conditions worthy to note at the outset.  First, there are no Tennessee cases directly on point (i.e., cases involving injuries on a golf course owned and operated by a government entity within the state of Tennessee).  Plaintiffs believe this is significant in that they contend such absence shows no premises liability case involving a golf course has ever been disposed of under TRUS.[1]  The Court is not persuaded that the lack of reported decisions bears any relation to the applicability of TRUS.  Second, T.C.A. §70-7-104 previously provided an exception to the sweeping immunity afforded under T.C.A. §70-7-102 that has since been deleted.[2]  Prior to its amendment in 2004, section 104(2) included an exception to the limitations of 102 in situations where ". . .the landowner receives consideration in exchange for permitting the recreational use of the land[.]"  Third, section 102 (both by the plain language of the statute and pursuant to established precedent), is not an exhaustive list of "recreational activities".  Section 102 is inclusive of any and all recreational activities whether or not specifically enumerated therein.  Section 105, however, has no such "catch all" language.[3]  The plain language of section 105 appears to be an exclusive

---

[1] This interpretation serves both the plaintiffs' argument that TRUS has no application and that, even if TRUS applies, the golf course is governed under section 105.

[2] Section 104 provides:

(a) This part does not limit the liability that otherwise exists for:

(1) Gross negligence, willful or wanton conduct that results in a failure to guard or warn against a dangerous condition, use, structure or activity; or

(2) Injury caused by acts of persons to whom permission to hunt, fish, trap, camp, hike, sightsee, cave, recreational noncommercial aircraft operations or recreational noncommercial ultra light vehicle operations on private airstrips, or any other legal purpose was granted, to third persons or to persons to whom the person granting permission, or the landowner, lessee, occupant, or any person in control of the land or premises, owed a duty to keep the land or premises safe or to warn of danger.

(b) Subdivision (a)(1) shall not be construed to impose liability or remove the immunity conferred by § 70-7-102 for failure to guard or warn of a dangerous condition created by forces of nature.

Tenn. Code Ann. § 70-7-104 (West eff. July 9, 2012).

[3] Section 105 provides:

-3-

listing of all activities covered by 105. Moreover, there are no cases holding that section 105 includes recreational activities not specifically enumerated therein.

***

The first question the Court must address is whether playing golf constitutes a "recreational activity" as contemplated by the TRUS. *Beckham v. City of Waynesboro*, 2024 Tenn. App. LEXIS 215 (Tenn. App. 2024). Plaintiffs point out that the TRUS appears under the Wildlife Resources section of the statute and urges the Court to limit its reading to activities such as sightseeing, trail hiking, water sports and the like. The developed case law available, however, is not quite so limiting. In *Victory v. State*, No. M2020-01610-COA-R3-CV, 2021 WL 5029407 (Tenn. App. 2021), the Court of Appeals held that a playground constructed on government land was subject to TRUS. In *Beckham*, the Court of Appeals held that swimming and diving into a pool constructed on city property was a recreational activity. Here, the plaintiff was engaged in playing golf on a course constructed on city owned property and both are managed by the city. While it cannot seriously be argued that golf is not a recreational activity, the statute provides that there must be some connection between the specifically enumerated activities to the one at issue (i.e., golf). Golf is played on a large area of land. Golf is played out in the open. There are often times trails the golfers must "hike" on the course. In the instant case, the golfers are required to traverse the trail up railroad tie steps to the tee box. The players must either "hike" the entire course or use off road vehicles (golf carts) to make their way around the course. All of these activities are specifically enumerated in 102.

---

Any person eighteen (18) years of age or older entering the land of another for the purpose of camping, fishing, hunting, sporting clays, shooting sports, and target shooting, including archery and shooting range activities, hiking, dog training, cutting or removing firewood, recreational noncommercial aircraft operations or recreational noncommercial ultra light vehicle operations on private airstrips, for such person's use for a consideration may waive, in writing, the landowner's duty of care to such person for injuries that arise from camping, fishing, hunting, sporting clays, shooting sports, and target shooting, including archery and shooting range activities, hiking, dog training, cutting or removing firewood, recreational noncommercial aircraft operations or recreational noncommercial ultra light vehicle operations on private airstrips for such person's use, if such waiver does not limit liability for gross negligence, or willful or wanton conduct, or for a failure to guard or warn against a dangerous condition, use, structure or activity.

Tenn. Code Ann. § 70-7-105 (West eff. April 6, 2015).

In any event, this Court believes that golf is properly includable in "such recreational activity as" those specifically set out in section 102.

Next, the Court turns to section 105. The language of 105, given its plain and ordinary meaning, leaves no room for inclusion of activities such as those explicitly enumerated. Section 105 does not contain golfing as an activity in its list. There are no cases known to the Court where any recreational activity not listed in 105 was included by judicial interpretation. While federal case law is not binding in this Court, the language of the Sixth Circuit Court of Appeals does address the exclusive nature of the list contained at section 105. "The liability under §105 is for injuries arising from one of a fixed list of recreational activities. . .". *Huls v. Davis*, 835 F. App'x 845, 850 (6th Cir. 2020). Consequently, the Court finds that 105 is inapplicable.

Since the Court has determined that Section 102 applies and that section 104 provides no exception for this lawsuit, the Court is constrained to grant the motion for summary judgment. Wherefore, for the foregoing reasons, the defendants are granted summary judgment as to all claims of the plaintiffs. Costs of this cause are taxed to the plaintiffs for which execution may issue.

Plaintiffs timely appealed to this Court.

## **Discussion**

Although not stated exactly as such, Plaintiffs raise the following issues on appeal: 1) whether the Trial Court erred in determining that golf is an unenumerated recreational activity covered by the TRUS under Section 102; and 2) whether the Trial Court erred in ruling that Section 105 of the TRUS does not provide an exception to the general rule regarding a landowner's duty of care even if the landowner opened its land or premises for consideration.

This case was resolved by summary judgment. A party is entitled to summary judgment only if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04. The issues on appeal hinge on statutory construction and are purely legal in nature. Regarding statutory construction, our Supreme Court has explained:

-5-

Issues of statutory construction present questions of law that we review de novo with no presumption of correctness. *Martin v. Powers*, 505 S.W.3d 512, 518 (Tenn. 2016). The primary goal of statutory interpretation is to carry out legislative intent without expanding or restricting the intended scope of the statute. *State v. Smith*, 484 S.W.3d 393, 403 (Tenn. 2016) (citations omitted). In determining legislative intent, we first must look to the text of the statute and give the words of the statute "their natural and ordinary meaning in the context in which they appear and in light of the statute's general purpose." *Mills v. Fulmarque, Inc.*, 360 S.W.3d 362, 368 (Tenn. 2012) (citations omitted). When a statute's language is clear and unambiguous, we enforce the statute as written; we need not consider other sources of information. *Frazier v. State*, 495 S.W.3d 246, 249 (Tenn. 2016). We apply the plain meaning of a statute's words in normal and accepted usage without a forced interpretation. *Baker v. State*, 417 S.W.3d 428, 433 (Tenn. 2013). We do not alter or amend statutes or substitute our policy judgment for that of the Legislature. *Armbrister v. Armbrister*, 414 S.W.3d 685, 704 (Tenn. 2013).

*Coleman v. Olson*, 551 S.W.3d 686, 694 (Tenn. 2018). Thus, we extend no presumption of correctness to the Trial Court's legal conclusions.

We first address whether the Trial Court erred in determining that golf is an unenumerated recreational activity covered by the TRUS under Section 102. In *Parent v. State*, 991 S.W.2d 240 (Tenn. 1999), our Supreme Court articulated the following test for determining whether a recreational use defense applies: "(1) whether the activity alleged is a recreational activity as defined by the statute; and if so, (2) whether any of the statutory exceptions or limitations to the immunity defense are applicable." *Id*. at 243. In *Parent*, the Tennessee Supreme Court determined that "[b]icycling is by its very nature a recreational activity and is comparable to the activities enumerated in § 102." *Id*. Importantly, the Supreme Court stated that the list of activities under Section 102 is "neither exclusive nor exhaustive." *Id*. Thus, there is no bright line test. An activity need not be listed in Section 102 for the section to apply, but it must be comparable to those listed.

Over the years, courts have grappled with which recreational activities are comparable to those listed under Section 102 and which are not. In a 2022 opinion by this Court, *Costner v. Maryville-Alcoa-Blount Cnty. Parks & Recreation Comm'n*, No. E2021-00189-COA-R3-CV, 2022 WL 3092906 (Tenn. Ct. App. Aug. 3, 2022), *no appl. perm. appeal filed*, we found that "attending a concert at a park is similar to sightseeing, bird watching, and nature and historical studies and research. *See* Tenn. Code Ann. § 70-7-102(a). The primary purpose and common thread in all these activities is that they are

leisure activities." *Id*. at *9.  In *Beckham v. City of Waynesboro*, we held that swimming and diving in a city-owned pool fell under Section 102 of the TRUS, as "swimming and diving are activities that are recreational in nature and comparable to several of the activities listed in § 102, and which both fall under the general category of 'water sports.'" 2024 WL 2153536, at *6.

However, not every court presented with a recreational activity purported to fall under Section 102 of the TRUS has agreed that the activity fits.  We note an opinion by the Federal District Court for the Middle District of Tennessee, *Weems v. Omni Hotels Mgmt. Corp.*, 672 F.Supp.3d 549 (M.D. Tenn. 2023), in which the District Court held among other things that the defendant landowner was not immune under Section 102 when the original plaintiff was injured while attempting to use a hot tub on the defendant's property.  *Id*. at 552-53, 555.  In *Weems*, the defendant argued that using a hot tub was akin to "water sports" and "sightseeing" under Section 102 of the TRUS.  *Id*. at 555.  The District Court disagreed, reasoning that using a hot tub was not a "water sport" since it did not involve as much risk as jet skiing or rowing, for example, nor was it "sightseeing" since there was no evidence that the plaintiff wanted to look at anything in particular.  *Id*. (Footnote omitted). We have found no case by the Tennessee Supreme Court or this Court addressing whether golf is an activity comparable to those listed at Section 102 of the TRUS.

Plaintiffs emphasize the nature-oriented character of the Section 102 listed activities, like hunting and fishing, to argue that golf does not belong in the same category. Plaintiffs state: "Adopting an interpretation of the TRUS which includes sports like golf would turn TRUS into a sweeping statute of premises liability immunity for <u>any</u> public or private landowners who open up their land to the public for any recreational activity remotely related to those like 'sightseeing' or 'hiking.'"  In response, Defendant analogizes golf to target shooting.  Defendant states: "Under [Plaintiffs'] proposed interpretation of TRUS, had Mr. Bates walked up to the tee box and used a rifle to shoot a target several hundred yards away, the City would be immune, but his use of a club and ball render the City liable."

We find Defendant's reasoning sound.  While a rifle is used for target shooting and a club is used for golf, the basic goal of both activities is the same.  In both golf and target shooting, the recreational user attempts to hit a target.  In the case of golf, the target is the hole.  In addition, golf typically involves significant walking over a large landscape, or up to a tee box as in this case.  This fairly implicates hiking, a Section 102 listed activity.  Golf carts may also be used, in which case the recreational user engages in off-road vehicle riding, another Section 102 listed activity.  Thus, golf bears key similarities to Section 102 listed activities target shooting, hiking, sightseeing, and off-road vehicle riding. Furthermore, golf is a leisure activity in a similar vein to swimming in a pool, bicycling, or watching a concert in a park.

All the same, Plaintiffs warn that interpreting golf to constitute a Section 102 recreational activity will expand landowner immunity under the TRUS beyond all reason. To the extent that this is a policy argument, it is better addressed to the General Assembly than to this Court. Moreover, we are not called upon in this appeal to decide every conceivable recreational activity falling under Section 102 of the TRUS, only whether golf does. Given the non-exclusive language of Section 102, courts must determine on a case-by-case basis whether a proffered recreational activity unlisted under Section 102 is nevertheless comparable to those listed in Section 102. Since golf is comparable to at least four of the recreational activities listed under Section 102, we hold that golf is an unenumerated recreational activity covered by the TRUS.

We next address whether the Trial Court erred in ruling that Section 105 of the TRUS does not provide an exception to the general rule regarding a landowner's duty of care even if the landowner opened its land or premises for consideration. Plaintiffs argue that, even if golf is a recreational activity covered by Section 102, Section 105 provides an exception to landowner immunity. Section 105 states as relevant: "Any person eighteen (18) years of age or older entering the land of another for the purpose of . . . [activities] . . . for such person's use for a consideration may waive, in writing, the landowner's duty of care to such person for injuries that arise from. . . [activities] . . . if such waiver does not limit liability for gross negligence, or willful or wanton conduct, or for a failure to guard or warn against a dangerous condition, use, structure or activity. " Tenn. Code Ann. § 70-7-105 (West eff. April 6, 2015). Here, Mr. Bates paid to use Defendant's land. Concerning Section 105, with its provision allowing for a waiver of a landowner's duty of care if the patron pays consideration, Plaintiffs argue in their reply brief: "That is the exact same duty of care that a landowner already does not owe pursuant to Section 102. Therefore, the only way Section 105 has any purpose is if TRUS has an exception for a landowner opening his or her land for consideration." (Footnote omitted).

Initially, we observe that Section 105 contains no language like that in Section 102 reflecting that its list of covered activities is non-exhaustive. Whereas Section 102 precedes its list of activities with "for such recreational activities as," there is no similar language in Section 105. Thus, the list of activities found in Section 105 is exhaustive. Notably, golf is not one of the activities listed in Section 105. Therefore, Section 105 is inapplicable because golf is not included in the statute's exhaustive list of activities. Even still, Plaintiffs assert that Section 105 implies a consideration exception in the TRUS.

The difficulty with Plaintiffs' contention is that Section 105 only provides for the possibility of a waiver of a landowner's duty of care when the patron pays consideration to use the land for certain purposes. That does not translate to a general consideration exception to the immunity afforded to a landowner by Section 102. Before a 2004

legislative amendment, the TRUS expressly had the very sort of exception Plaintiffs say it has now. In 2004, the General Assembly amended Tenn. Code Ann. § 70-7-104 to remove subsection (2), which provided an exception to landowner immunity if the landowner received consideration for the use of the land. *See Mathews v. State*, No. W2005-01042-COA-R3-CV, 2005 WL 3479318, at *2 (Tenn. Ct. App. Dec. 19, 2005), *no appl. perm. appeal filed* ("[E]xceptions to this limitation may exist where the dangerous condition is attributable to the gross negligence of the landowner, or when the landowner receives consideration in exchange for permitting the recreational use of the land. T.C.A. §§ 70-7-104(1), -104(2) (2001) (subsection (2) repealed by a 2004 amendment)."); 2004 Tenn. Pub. Acts, Ch. 622, § 9. Undaunted, Plaintiffs argue that "[t]he legislature most likely removed the language in Section 104 because Section 105 made it unnecessary."

Respectfully, that is a stretch. At most, Plaintiffs can argue that Section 105 implies a consideration exception in the TRUS. However, in 2004, the General Assembly repealed the language in Section 104 of the TRUS expressly providing a consideration exception. Why would the General Assembly, if it wanted to keep a consideration exception in the TRUS, repeal the express language providing one? The more logical interpretation is that the General Assembly intended to eliminate the general consideration exception. We may not revive statutory language that the General Assembly has repealed. What the General Assembly's repeal of the consideration exception in Section 104 of the TRUS means for Section 105 and whether its waiver has any remaining purpose is unnecessary to decide here. It is enough for our analysis that there is no consideration exception in the TRUS to negate Defendant's immunity under Section 102. That Mr. Bates paid to play golf on Defendant's course is of no moment.

In sum, Defendant is immune from Mr. Bates' premises liability claim. No exceptions to the TRUS apply. Since Ms. Bates' loss of services and loss of consortium claims derive from Mr. Bates' premises liability claim, the Trial Court properly dismissed those claims as well. Defendant is entitled to summary judgment. We affirm.

### Conclusion

The judgment of the Trial Court is affirmed, and this cause is remanded to the Trial Court for collection of the costs below. The costs on appeal are assessed against the Appellants, Robert Bates and Laurel Diane Bates, and their surety, if any.

_____
D. MICHAEL SWINEY, CHIEF JUDGE